DEVITT, Guardian *ad litem,* Appellant, vs. CITY OF MILWAUKEE, Respondent.

*March 3—April 8, 1952.*

*John R. Devitt,* guardian *ad litem,* of Milwaukee, for the appellant.

For the respondent there was a brief by *Walter J. Mattison,* city attorney, and *Richard F. Maruszewski,* assistant city attorney, and oral argument by *Mr. Maruszewski.*

MARTIN, J. Sec. 75.521, Stats., gives the city of Milwaukee power to foreclose tax-delinquent property by an action

*in rem* where the city holds tax sale certificates which remain unpaid for three years or more. After a delinquency of three years the city treasurer is required to file a petition for foreclosure of such tax liens with the circuit court for Milwaukee county, which filing has the same force and effect as the filing of a *lis pendens* and the same force and effect as the filing of a separate complaint against each parcel of real estate described therein.

Sub. (3) (c) of sec. 75.521, Stats., provides:

"A copy of the petition and so much of the list of tax liens as shall include the description of a particular parcel shall be mailed by registered mail by the [city] treasurer to the last known post-office address of each owner and mortgagee of record. . . ."

Notice that the petition and list of tax liens has been filed is required to be posted in the office of the city treasurer and published once a week for three successive weeks in the English-language newspaper having the largest circulation in the city. Where the interests of minors or incompetents are involved a guardian *ad litem* must be appointed. Judgments are binding upon all defendants, and have the effect of the issuance of tax deeds and of judgments to bar former owners and quiet title.

Appellant concedes that all the provisions of sec. 75.521, Stats., have been complied with by the city in this matter.

This section outlines the final step in the statutory procedure for the assessment and collection of real-estate taxes. Prior to the commencement of proceedings thereunder, other statutes have provided for notice to the taxpayer of assessment; opportunity to examine the tax rolls; time and place of hearing before the board of review; time, place, and method of payment; delinquency; sale; time limitation for redemption, etc., in various ways, usually by publication or posting. Such notice is sufficient to satisfy the requirements of due process.

"As applied to the proceedings for the levy and collection of taxes, due process 'does not imply or require the right to such notice and hearing as are deemed essential to the validity of the proceedings and judgments of judicial tribunals.'" 3 Cooley, Taxation (4th ed.), p. 2258, sec. 1113.

Cooley also states that notice of assessment may be given either by personal notice, or by some general notice which is reasonably certain to reach the taxpayer, or by some general law which fixes the time and place of meeting, and of which he must take notice.

"The process of taxation does not require the same kind of notice as is required in a suit at law, or even in proceedings for taking private property under the power of eminent domain. It involves no violation of due process of law, when it is executed according to customary forms and established usages, or in subordination to the principles which underlie them." *Bell's Gap R. Co. v. Pennsylvania* (1890), 134 U. S. 232, 239, 10 Sup. Ct. 533, 33 L. Ed. 892.

"In its essence the action is one to enforce the payment of taxes, and the state in authorizing such action has acted in exercise of its sovereign power to raise revenue essential to carry on the affairs of state and the due administration of the laws. The action 'is not judicial in the strict sense; it is but a step in an administrative proceeding in which judicial assistance is invoked as a matter of convenience, and because with its assistance the rights of parties can be most surely protected, and the public interest at the same time conserved.' [Citing cases.] In processes of taxation the same stringent requirements for notice are not necessary as in ordinary judicial proceedings. [Citing cases.] A landowner is treated as having knowledge of the statutory provisions relating to taxation including those in respect to notices to be given to landowners." *Buffalo v. Hawks* (1929), 226 App. Div. 480, 485, 236 N. Y. Supp. 89 (concurring opinion).

It is observed in most of the authorities dealing with the subject that actions *in rem* for the foreclosure of tax liens arise in aid of the right and power of the state to collect public revenue for its support, and their object is to provide a

speedy and efficient means of accomplishing that purpose in making the land answer for the taxes due.

When an individual acquires real estate he is presumed to know what the law provides with respect to the taxation and condemnation of land. If he exercises reasonable diligence in the preservation of his interests, he is apprised of tax assessments, the time, place, and manner of payment, etc. If he has not sought to protect his property against the lien of delinquent taxes, it is subject to the final step in the administrative procedure of collection, foreclosure. Consequently, it has been uniformly held that tax statutes may adopt a procedure summary in nature and that notice of such proceedings need not be more than reasonably adequate to afford the owner an opportunity to protect his property.

In *Leigh v. Green* (1904), 193 U. S. 79, 92, 24 Sup. Ct. 390, 48 L. Ed. 623, it was said:

" 'Looked at either from the point of view of history or the necessary requirements of justice, a proceeding *in rem* dealing with a tangible res, may be instituted and carried to judgment without personal service upon claimants within the state or notice by name to those outside of it, and not encounter any provision of either constitution. Jurisdiction is secured by the power of the court over the res.' . . .

"The principles applicable which may be deduced from the authorities we think lead to this result: Where the state seeks directly or by authorization to others to sell land for taxes upon proceedings to enforce a lien for the payment thereof, it may proceed directly against the land within the jurisdiction of the court, and a notice which permits all interested, who are 'so minded,' to ascertain that it is to be subjected to sale to answer for taxes, and to appear and be heard, whether to be found within the jurisdiction or not, is due process of law within the Fourteenth amendment to the constitution."

*Buffalo v. Hawks, supra,* was an action *in rem* to foreclose certain tax certificates and the statute under which the city proceeded required service upon the defendants by ordinary

mailing, and by publication. It was there contended, as here, that the provision authorizing such service was violative of the due-process clause of the federal and state constitutions. In the majority opinion, the court said (pp. 483, 484):

"There are many instances where personal service would be impracticable; others where it would be impossible. If a court could not obtain jurisdiction of a defendant except by personal service, one could easily defeat the administration of justice by keeping his whereabouts unknown, or by absenting himself from the state.

"The guaranty of the constitution was never intended to perpetuate any particular method of bringing a party into court. So long as his substantial rights are preserved, the legislature may make such changes in the manner of the service of the process of the courts as it deems proper. . . .

"It has repeatedly been held that the right to take property under the taxing power of the state . . . is a matter of legislative regulation and direction, and that in such a proceeding a notice, even if it be constructive and indirect, is sufficient to escape the criticism that it is violative of the 'due-process' clause of the constitution, if the manner of giving it is reasonably adapted to the nature of the case and its subject matter, and if it gives to the property owner a reasonable opportunity to protect his lands from an arbitrary or unjust confiscation."

Probably the most recent case in which *in rem* foreclosure of tax liens under a statute similar to our sec. 75.521 was considered is *Newark v. Yeskel* (1950), 5 N. J. 313, 74 Atl. (2d) 883. The plaintiff city had acquired title to the property by foreclosure under the New Jersey *In Rem* Tax Foreclosure Act of 1948 and subsequently sold the same to the defendant. Within thirty days plaintiff made tender of the deed, but defendant refused to purchase the land, claiming that the act was unconstitutional and plaintiff had not acquired marketable title under the foreclosure proceedings had pursuant thereto. Plaintiff commenced an action against defendant for specific performance. In his answer defendant

charged that the act was unconstitutional because, among other things, (1) it failed to provide, by service of process or by substituted service, for notice to the owner and other persons interested in the land affected by the foreclosure, and (2) it failed to provide for service of process upon infants and incompetents through guardians or other legal representatives. The act provided for notice by publication, posting, and by ordinary mailing to persons having an interest in the lands.

In its very learned opinion the New Jersey supreme court discussed, and quoted from, many United States supreme court cases dealing with the subject, and said (p. 318) :

"While the constitutionality of statutes which provide for *in rem* or summary foreclosure of delinquent tax liens on real property has been challenged on many occasions on the ground that they violate the due-process clause of the state and federal constitutions, the courts have uniformly sustained the constitutionality of such statutes. . . .

"The rationale of the decisions sustaining such statutes is that the speedy collection of taxes, unfraught with procedural complications, is indispensable for the support of the government and that proceedings for the collection of taxes are *in rem* and require no personal service of notice upon the owners or lienors of the land since, once the taxes on the land are duly assessed in accordance with the requirements of due process, the owners or lienors may be presumed to know that the land will be sold for nonpayment of taxes. This philosophy has been expressed by the supreme court of the United States on many occasions. [Citing cases.] 'That the notice is not personal but by publication is not sufficient to vitiate it. Where, as here, the statute prescribed the court in which and the time at which the various steps in the collection proceedings shall be taken, a notice by publication to all parties interested to appear and defend is suitable and one that sufficiently answers the demand of due process of law.' "

With regard to the contention that the act did not provide specifically for the protection of infants and incompetent

persons having an interest in the property, the court said (p. 328):

"It is sufficient to say that notice in a tax proceeding *in rem* is notice to the whole world and, as succinctly stated in *Levy v. Newman,* 130 N. Y. 11, 28 N. E. 660 (C. of A. 1891), 'The right to redeem lands sold to enforce the collection of taxes assessed against it is purely statutory, and statutes providing the procedure for assessing and collecting taxes, for the sale of land for their nonpayment, and for the redemption of lands sold, are applicable to infants and persons under disabilities, unless they are excepted from their operation. . . .' "

And the court stated that such persons were specifically included within the operation of the New Jersey act. This is likewise true of sec. 75.521, Stats., which specifically requires that a guardian *ad litem* be appointed for minors, incompetents, absentees, and unknown persons.

*Mullane v. Central Hanover Bank & Trust Co.* (1950), 339 U. S. 306, 70 Sup. Ct. 652, 94 L. Ed. 865, discussed in both briefs, which dealt with the constitutional sufficiency of notice to beneficiaries on judicial settlement of accounts by the trustee of a common trust fund, is not in point here. As pointed out in the *Newark Case, supra* (p. 321):

"The difference between a proceeding for the settlement of a trust account by a banking institution and a proceeding by a political subdivision of the state to enforce the payment of taxes which have been regularly assessed and levied is patent."

Neither is the advisory opinion, *Opinion of the Justices* (1943), 139 Me. 420, 38 Atl. (2d) 561, helpful in this case. Although the proposed statute there involved outlined a summary procedure of foreclosure of delinquent tax liens on real estate, no reasons were given by the court for concluding that such procedure might deprive a person of property without due process of law.

We conclude that the procedure provided for in sec. 75.521, Stats., and particularly the notice required in sub. (3) (c) thereof, fully complies with the constitutional requirements of due process of law.

*By the Court.*—Judgments affirmed.