Chicago & North Western Transportation Company, and another, Respondents, v. Pedersen, and others, Appellants.

*No. 75–702. Argued October 4, 1977.—*
*Decided November 14, 1977.*
(Also reported in 259 N. W. 2d 316.)

There was a joint brief by *Bronson C. La Follette*, attorney general, *Thomas J. Balistreri*, assistant attorney general for appellant, Attorney General; and *Thomas P. Fox*, district attorney of Bayfield county for appellant, *Earl H. Pedersen*, with oral argument by *Thomas J. Balistreri*.

For the respondents there was a brief by *Roger S. Bessey, Terry E. Johnson and Borgelt, Powell, Peterson & Frauen, S. C.* and oral argument by *Roger S. Bessey*, all of Milwaukee.

DAY, J. This is an appeal from a declaratory judgment in which the trial court held secs. 700.30 and 893.075, Stats. (Ch. 260, L. 1973) unconstitutional and enjoined all Wisconsin county registers of deeds from carrying out the provisions of the act. We affirm the judgment of the trial court.

Sec. 700.30, Stats., at issue here, reads as follows:

"700.30 *Mineral Rights.* (1) Any person, other than the surface fee owner, who claims title to mineral rights in land arising from an instrument other than a lease from the surface fee owner of 10 years' duration or less which by its terms is in full force and effect, shall record his claim with the register of deeds of the county in which the land is situated. The claim shall describe the reserved rights and the land in which the rights are claimed. The register of deeds shall record the claim in a register of mineral rights and the claimant shall pay the recording fee under s. 59.57. In addition, the claimant shall thereafter pay an annual registration fee of 15 cents per acre or fraction thereof with a minimum fee of $2 for each single description registered on the lands wherein such mineral rights are claimed. Failure to register any claim of mineral rights shall result in reversion of such rights to the surface fee owner. Failure to pay the registration fee within 3 years of the annual due date shall cause all rights to revert to the surface fee owner.

"(2) Any claim of mineral rights separate from surface fee ownership arising from an instrument other

than a lease from the surface fee owner of 10 years' duration or less which by its terms is in full force and effect, and recorded prior to December 31, 1974, shall be void and all rights under such claim shall revert to the surface fee owner unless such claim is recorded prior to December 31, 1977, as provided in this section. Claims of mineral rights separate from surface fee ownership arising from instruments recorded after December 31, 1974, must be recorded as provided in this section within 3 years of the date of recording the instrument creating or reserving such rights; failure to record such claims shall void such claims, which shall then revert to the surface fee owner.

"(3) Mineral rights, other than mineral rights claimed by the surface fee owner of record, may not be claimed unless based on a recorded instrument which shall be specifically referred to in the registration of such rights required by this section.

"(4) Of the annual registration fee, one-third shall go to the county in which the land is located, one-third to the municipality in which the land is located and the remaining one-third to the geological and natural history survey to be used for identification and evaluation of mineral resources of the state. The register of deeds shall collect such payments and maintain records sufficient to identify delinquencies in payments and he shall turn the payments over to the county treasurer who shall forward the payments to those entitled to them under this subsection no later than February 28 of the year following the due date.

"(5) Municipalities and counties shall register all lands owned by them on which they claim mineral rights but shall not be required to pay a fee. Lessees of mineral rights on lands owned by counties or municipalities shall be required to pay the fee under sub. (1).

"(6) If the fee under this section is not paid on or before the due date of December 31 of each year, it will be subject to the interest rate under s. 71.13 (1) accruing from the preceding December 1."

Sec. 893.075, Stats. reads as follows:

"893.075 *Adverse Possession Of Mineral Rights Defined.* Adverse possession of the land as defined in this

chapter shall be deemed to include adverse possession of all mineral rights not registered under s. 700.30.

"*Section 2. Effective Date.* The first registration fee under this act shall be paid for the year 1974 and shall be paid not later than December 31, 1974. On enactment hereof, the attorney general shall promptly commence an action seeking a declaratory judgment regarding the constitutionality of this act."

Sec. 700.30, Stats. requires persons, other than surface fee owners and lessees holding leases of less than ten years, who claim title to mineral rights in land, to record their claims and pay a recording fee. Non-exempt claimants are also required to pay an annual registration fee of fifteen cents for each acre of mineral rights claimed. Failure to record claims of mineral rights or pay the annual registration fee results in reversion of the mineral rights to the surface fee owner.

The plaintiff-respondent railroad companies (hereinafter plaintiffs) claim in excess of 250,000 acres of severed mineral rights in Wisconsin, including claims in Bayfield county. The plaintiffs started a declaratory judgment action to have the statutes declared unconstitutional and to have their enforcement enjoined.

Following a hearing, the trial court issued a memorandum opinion holding the statutes were unconstitutional as violating the due process and equal protection clauses of the United States Constitution, and the uniformity of taxation clause of the Wisconsin Constitution.

Judgment was entered January 12, 1976 declaring Ch. 260 of the Laws of 1973 unconstitutional in its entirety and permanently enjoining the defendant-respondent registers of deeds (hereinafter defendants) from carrying out its provisions.

We hold that sec. 700.30, Stats., is unconstitutional because its enforcement provisions deny procedural and

substantive due process.[1] The enforcement provisions in the statute are not severable from the statute as a whole so the entire statute fails.[2]

Sec. 700.30, Stats. provides that owners of severed mineral rights may lose those rights to the surface owners under a number of circumstances more fully described below.

Mineral rights are an interest in land which may be created or transferred as any other estate in land. *Gillett and another v. Treganza*, 6 Wis. 343, 348 (1858) ; *Ganter and others v. Atkinson and others*, 35 Wis. 48, 51 (1874).

Where the mineral right is severed from the surface fee

". . . it has been held to be property, distinct from the land itself vendible, inheritable and taxable." *Elder v. Wood*, 208 U.S. 226, 232, 28 S. Ct. 263, 52 L. Ed. 464 (1908).

Before a person may be deprived of property, that person has a right to a hearing. The requirements of the hearing will vary from case to case depending on the nature of the right or property threatened, but the hearing must allow for consideration of facts essential to the decision. *Bell v. Burson*, 402 U.S. 535, 540–542, 91 S. Ct. 1586, 29 L. Ed. 90 (1971).

---

[1] The plaintiffs claim a denial of due process under both the state and federal constitutions. ". . . Art. I, Sec. 1 of the Wisconsin Constitution is . . . substantially equivalent to the due-process and equal protection clauses of the Fourteenth amendment to the United States Constitution." *State ex rel. Sonneborn v. Sylvester*, 26 Wis.2d 43, 49, 132 N.W.2d 249 (1965). *State ex rel. Cresci v. H&SS Dept.*, 62 Wis.2d 400, 414, 215 N.W.2d 361 (1974).

[2] The plaintiffs also argue that the statute denies equal protection and offends Art. VIII, Sec. 1 of the Wisconsin Constitution. The latter section requires that property taxes be uniform. We do not reach these issues.

In this case, the plaintiffs' mineral rights will revert to the surface owner if they are not registered or taxes are not paid on them. At the least, the plaintiffs must have a hearing where they can question the determination of the register of deeds that the registration has not been done or that the taxes have not been paid.

Implicit in the right to a hearing is adequate notice of the hearing. Personal service is always sufficient notice. *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 313, 70 S. Ct. 652, 94 L. Ed. 865 (1950). Where a person's location is known or easily ascertainable personal service is also required. *Shroeder v. City of New York,* 371 U.S. 208, 212, 213, 83 S. Ct. 279, 9 L. Ed.2d 255 (1962). But for, ". . . persons missing or unknown, employment of an indirect and even a probably futile means of notification is all that the situation permits . . ." For such persons publication is adequate notice. *Mullane, supra,* at 339 U.S. 306, 317.

In an in rem proceeding for the collection of property taxes the standards for the required notice are less stringent. In *Devitt v. Milwaukee,* 261 Wis. 276, 52 N.W.2d 872 (1952), the City of Milwaukee adopted an ordinance in conformity with sec. 75.521, Stats. which allowed for the enforcement of property taxes by an in rem action where tax certificates remained unpaid for over three years. The procedure set out in the act required that a petition of foreclosure be filed with the circuit court and that the petition would have the same effect as a lis pendens. A copy of the petition would be sent by registered mail to the last known addresses of owners and mortgagees and notice of the petition would appear in the city newspaper with the largest circulation once a week for three weeks. In deciding that the procedure complied with due process, this court stated that:

"The process of taxation does not require the same kind of notice as is required in a suit at law, or even in proceedings for taking private property under the power of eminent domain." *Devitt, supra,* at 261 Wis. 276, quoting from *Bells Gap R. Co. v. Pennsylvania,* 134 U.S. 232, 239, 10 S. Ct. 533, 33 L. Ed. 892 (1890).

The payment of the fees under sec. 700.30, Stats. is a tax. The fees raise revenues beyond what is necessary to the administration of the registration scheme. Sec. 700.30(4), Stats. provides that one-third of the fees will go to the state geological and natural history survey.[3] In contrast to the notice procedure approved in *Devitt, supra,* nothing in sec. 700.30, Stats. provides for any procedural due process. Therefore, the law unconstitutionally allows for the deprivation of property without due process.[4]

The attorney general contends that if the statute lacks procedural due process, this court should formulate due process safeguards and read them into the terms of the statute. Procedural due process requirements have been read into other statutes.[5] Because a number of alterna-

---

[3] All the parties to this appeal agree that the registration fees are a tax.

[4] The attorney general contends that the act itself is notice. There is no authority for that argument which is a novel approach to the problem of notice. The attorney general also contends that there is nothing that needs to be decided at a hearing. As was pointed out above, a severed mineral rights owner may want to at least raise the factual issues of whether the registration was done or the tax paid.

[5] In *State ex rel. Kovach v. Schubert,* 64 Wis.2d 612, 219 N.W.2d 341 (1974), this court held that due process required that a defendant who had been found guilty and mentally defective at the time of the crime, be given a third phase in his trial to determine if he was still mentally defective. In *Steele v. Gray,* 64 Wis.2d 422, 223 N.W.2d 614 (1974), due process required a

tive methods are possible, it is more fitting for the legislature to make the choice than for this court to do so.

## Substantive Due Process

The plaintiffs contend that the forfeiture provisions of the statute deny them substantive due process by an unreasonable use of the police power because their mineral rights revert to the surface owners if the rights are not registered or taxes are not paid on them.

The test for a proper exercise of the police power is whether,

". . . the means chosen have a reasonable . . . relationship to the purpose or object of the enactment, if it has, and the object is a proper one, the exercise of the police power is valid." *State v. Jackman,* 60 Wis.2d 700, 705, 211 N.W.2d 480 (1973).

This statute not only provides for a forfeiture of unregistered mineral rights, it also provides that the forfeited rights revert to the surface owner. This procedure violates the rule that the legislature cannot take private property from one person for the private use of another. *Chicago & N. W. R. Co. v. Morehouse,* 112 Wis. 1, 87 N.W. 849 (1901).

The attorney general admits that there is a private use here, but argues that this private use is so intimately connected with the public necessity of clearing up uncertainty over mineral right ownership that there is a quasi-public use so as to justify the legislative taking of property for that purpose. *Chicago & N. W. R. Co.,*

hearing prior to administrative revocation of a prison inmates good time. In *State ex rel. Johnson v. Cady,* 50 Wis.2d 540, 185 N.W. 306 (1971), due process required a hearing before revocation of parole.

*supra,* and 16a, C.J.S. Constitutional Law §647a, pp. 940–941. The attorney general's argument is unpersuasive. First, it's questionable whether the purpose of clearing up mineral title uncertainty is so important that the reversion of mineral rights to the surface owner becomes a quasi-public use. Second, in *Chicago & N. W., supra,* the private parties were given compensation for the property taken for the quasi-public use. Sec. 700.30, Stats. provides for no such compensation.

Sec. 700.30, Stats. provides that severed mineral rights owners or long term lessees of mineral rights must register their mineral rights and pay a yearly registration fee on the mineral rights within three years or else the rights revert to the surface fee owner. This reversion would occur without a hearing or notice of that hearing having been given to the severed rights owner, and without compensation having been paid to them. These enforcement procedures are entirely lacking in substantive and procedural due process.

The attorney general contends that the statute is severable because the enforcement provisions may be separated from the rest of the statute.

The intent of the legislature and the viability of the severed portion of the statute when standing alone are the factors to consider when deciding whether a statute should be severed. Material provisions of a statute may be eliminated,

". . . if the part upheld constitutes, independently of the invalid portion, a complete law in some reasonable aspect, unless it appears from the act itself that the legislature intended it to be effective only as an entirety and would not have enacted the valid part alone." *Madison v. Nickel,* 66 Wis.2d 71, 79, 223 N.W.2d 865 (1974). *City of Milwaukee County v. Boos,* 8 Wis.2d 215, 224, 99 N.W.2d 139 (1959).

Sec. 700.30, Stats. cannot stand without the objectionable enforcement provisions. Without the enforcement provisions, severed mineral rights owners would be required to register their rights and pay fees on them, but absolutely nothing would happen if they did not.

The attorney general suggests that the payment of fees could be enforced the same as other taxes on real or personal property, but that was not the legislature's intent. The legislature intended that the mineral rights would revert to the surface owner, which violates substantive due process as pointed out above. Without its enforcement procedures, sec. 700.30, Stats. is not a viable law and would not have the same effect as the one intended by the legislature.

*By the Court.*—Judgment affirmed.