Elmer RITTER, and Helen Ritter, Plaintiffs-Appellants-Cross Respondents,†

v.

Peggy S. ROSS, County Treasurer for Rock County, Wisconsin, and Rock County, a Body Politic in the State of Wisconsin, Defendants-Respondents-Cross Appellants.

Court of Appeals

*No. 95–1941. Oral argument September 13, 1996.—Decided December 12, 1996.*

(Also reported in 558 N.W.2d 909.)

†Petition to review denied.

For the plaintiffs-appellants-cross respondents the cause was submitted on the briefs of *Joanne M. Mc Cormack* of *Oliver, Close, Worden, Winkler, Greenwald & Maier* of Lake Geneva. There was oral argument by *Thomas E. Greenwald* and *Ann T. Dempsey.*

For the defendants-respondents-cross appellants there were briefs and oral argument by *Eugene R. Dumas*, deputy corporation counsel for Rock County, of Janesville.

Before Eich, C.J., Dykman, P.J., and Vergeront, J.

EICH, C.J. Elmer and Helen Ritter sued Rock County and its treasurer, Peggy Ross,[1] seeking to void a tax foreclosure and sale of a parcel of nonhomestead property they owned in the County and to recover monetary damages and attorney fees on several theories. The County began the foreclosure proceedings when a tax arrearage of $84.43 on the Ritters' property remained unpaid for several years. The Ritters did not defend the action and, after obtaining a foreclosure judgment, the County sold the property to a third party for $17,345, retaining the entire amount of the sale proceeds.

The Ritters' complaint asserted federal constitutional claims, including a claim for reasonable attorney fees, under the Federal Civil Rights Act, 42 U.S.C. §§ 1983 and 1988, a claim for violations of the Due Process and Takings Clauses of the Fifth and Fourteenth Amendments, as well as state-law damage

---

[1] Unless otherwise required by the text, we refer to the defendants collectively as "the County."

claims for unjust enrichment—all based on the County's retention of the sale proceeds. They also sought damages for loss of future profits from the land, namely, anticipated federal agricultural subsidies.

The trial court ruled that, although the County's notice of the foreclosure proceedings met due process standards insofar as it notified them of the pendency of the *in rem* foreclosure action, it was constitutionally inadequate for failing to apprise them of the possibility that the County would take the entire parcel in satisfaction of a comparatively small tax lien. The court also held that the County's action amounted to a taking of the Ritters' property without just compensation in violation of the Fifth Amendment. It dismissed their claim for attorney fees under 42 U.S.C. § 1988, however, because they failed to establish that Ross or the County had intentionally or maliciously denied their constitutional rights. Finally, the court ruled that (1) the County's failure to obtain an appraisal of the Ritters' property prior to the sale violated § 75.69, STATS., which states that a county may not sell tax-delinquent property unless the sale and the "appraised value" of the property have first been advertised by publication; and (2) the Ritters did not have a valid claim for damages for loss of future profits from the land.

Having so ruled, the court concluded that the County had been unjustly enriched by retaining the sale proceeds over and above the Ritters' tax liability, and ordered that judgment be entered for the Ritters in the sum of $37,835.57, which represented the fair market value of the property at the date of the sale, less the $84.43 tax lien.

While the parties raise a variety of issues on the appeal and cross-appeal,[2] we consider the constitutional issues to be dispositive: whether the Ritters are entitled to relief under the Due Process and Takings Clauses of the Constitution based on the manner in which the County proceeded in foreclosing the tax lien and selling the property. We hold that they are not. We therefore reverse the judgment and remand to the trial court with directions to enter judgment dismissing the Ritters' action.[3]

---

[2] The Ritters argue that the trial court erred in (1) refusing to award attorney fees under the Civil Rights Act for the constitutional violations; (2) dismissing their claim for future damages; and (3) ruling that the notice of the pendency of the foreclosure proceedings was adequate under the Due Process Clause. On its cross-appeal, the County maintains that (1) the Ritters' action must be dismissed for their failure to follow the notice-of-claim provisions of § 893.80, STATS.; (2) the County did not violate the "appraised value" provisions of § 75.69, STATS.; and (3) all applicable statutory and constitutional notice requirements were met.

[3] Because we reject the Ritters' arguments that the County's actions were constitutionally improper, we need not consider the claim for attorney fees under 42 U.S.C. §§ 1983 and 1988. Nor, for the same reasons, need we consider the County's claim that the Ritters' failure to comply with the notice-of-claim provisions of § 893.80, STATS., also requires dismissal of their action.

As to the trial court's determination that the County's failure to have the property appraised before the sale violated § 75.69, STATS. (requiring foreclosed property to be sold for its "appraised" value), which the County has cross-appealed, any such failure on the County's part cannot affect the Ritters' rights because, as we have held, they are not statutorily or constitutionally entitled to the proceeds. Similarly, absent any valid claim to the surplus proceeds, the Ritters can have no triable claim for unjust enrichment. *Oosterwyk v. Milwaukee*

## I. Background

Helen Ritter, who was a licensed real estate salesperson and broker for approximately thirty years (in Illinois and Wisconsin respectively), and her husband, Elmer, purchased sixty-eight acres of undeveloped land in Rock County in 1982, selling off some and retaining approximately thirty-eight acres for themselves.

In early 1985, the Ritters received a statement of 1984 real estate taxes due on the property from the treasurer's office. The notice was in the standard form, containing information on the property and its assessment, the amount due and a warning that delinquent taxes would be subject to interest and penalties. It stated that the Ritters' bill of $710.03 could be paid in two installments of $355.02 and $355.01, on February 28 and July 31, 1985, or in full by February 28. It is undisputed that Helen Ritter paid the first installment, but the facts surrounding payment of the second are not as clear.

Helen Ritter testified that she mailed a money order for the second installment to the County in July 1985. She also stated that, several months later, she received notice from the County that the taxes had not been paid, so she purchased another money order and mailed it to the County. She corresponded with the County regarding its nonreceipt of the second installment, but she responded to the County's repeated requests for payment by simply mailing a photocopy of the purported second-installment money order to the treasurer's office. At some point in mid-

*County,* 31 Wis. 2d 513, 517, 143 N.W.2d 497, 499, *cert. denied,* 385 U.S. 981 (1966).

1988, she also created a "ledger"-type form showing the payment, and sent that as well.

This went on for several years, until County Treasurer Peggy Ross wrote to the Ritters on December 15, 1988, as follows:

> We are not sure what you are trying to tell us . . . . According to our records you still owe taxes back to 1984.
>
> The County will be taking this property because of back taxes.
>
> If your records show that they are paid, please bring to [our] office or send copies of the receipts. Our records do not show any of the payments that you have noted . . . .

The Ritters responded by sending still more photocopies of their "ledger" and the money order. Several days later, Ross again wrote to the Ritters explaining how the payments received in the treasurer's office had been applied since 1985,[4] and stating that taxes remained delinquent on the property in the sum of $84.43. The letter concluded:

> It is very important that you personally come in and bring your receipts showing that you have paid the 1984's. Your receipts showing copies of your money orders [are] of no help.

Elmer Ritter responded by returning the letter to Ross with a handwritten note in the margin stating: "All I have here is receipts of payments mailed Rock

---

[4] In the months and years this exchange of delinquency notices and correspondence was occurring, the Ritters paid current tax bills on the property as they came due. The County apparently applied some of those payments to the $355.01 "delinquent balance," including interest, on the Ritters' 1984 taxes, leaving, as indicated, a balance of $84.43 as of mid-1988.

Cty. Treas." Then, several months later, in January 1989, Helen Ritter sent a note to Ross indicating that, in past years, she had mailed photocopies of a money order and ledger sheet to Ross, and enclosed another copy of each.

On July, 14, 1989, the County sent the Ritters a document entitled "NOTICE OF COMMENCEMENT OF PROCEEDINGS IN REM TO FORECLOSE TAX LIENS BY ROCK COUNTY." The notice, which was sent to landowners in Rock County, including the Ritters, against which tax liens had been filed, indicated the amount of each owner's lien and stated that judicial proceedings were being instituted to "foreclose" them. The notice concluded by stating that the liens could be redeemed by paying the delinquent amount to the treasurer by September 27, 1989. Attached to the notice was a copy of the petition filed with the court, stating that the County was seeking judgment "vesting title [of all such lands] in the county . . . and barring any and all claims whatsoever of the former owner(s) . . . ." The entry under the Ritters' name listed the property in question and showed a lien in the amount of $84.43 for unpaid 1984 real estate taxes.

Neither Helen Ritter—who understood that unpaid or underpaid real estate taxes could lead to foreclosure—nor Elmer Ritter responded to the notice or appeared in any way in the proceedings. In October 1989, judgment was entered vesting title to their property in the County on the basis of the unpaid 1984 taxes. As indicated, the County sold the property for $17,345. The County applied the proceeds of the sale to

the taxes due, retaining the surplus,[5] and this action followed.

## II. The Takings Clause

The trial court concluded that the County's retention of the proceeds from the Ritters' property in excess of $84.43 amounted to an unconstitutional taking of their property without just compensation in violation of the Fifth Amendment to the Constitution of the United States. We review constitutional issues *de novo* without deference to the trial court's decision. *In re Barthel*, 161 Wis. 2d 587, 592, 468 N.W.2d 689, 691 (1991).

To maintain a claim under the Takings Clause, the plaintiff must have an interest in the property that the government has allegedly taken. *United States v. Dow*, 357 U.S. 17, 20 (1958). We thus consider whether the Ritters had a property interest in the excess proceeds of the foreclosure sale, because that is the "property" they claim was unconstitutionally taken by the County.

[5] As we discuss in greater detail in Part III, the collection of delinquent property taxes is governed by chapter 75, STATS. Section 75.521 gives counties the authority to foreclose property tax liens through *in rem* judicial proceedings when taxes remain unpaid for more than three years. A foreclosure judgment under chapter 75 gives the county a tax deed, vesting it with fee simple title to the property. *Leciejewski v. Sedlak*, 116 Wis. 2d 629, 638, 342 N.W.2d 734, 738 (1984). A tax deed is not derivative but creates new title in the county which "foreclose[s] all rights, titles, interests, liens, and claims in the property . . . subject to the foreclosure." *Id.* at 639, 342 N.W.2d at 739. Once it receives the deed, the county may sell the property for the "most advantageous" bid. Section 75.69(1).

.

Cases considering constitutional challenges to state tax foreclosure sales generally conclude that a taxpayer has a recognizable interest in the excess proceeds from such a sale only if the state constitution or tax statutes create such an interest. In *Spurgias v. Morrisette*, 249 A.2d 685, 687 (N.H. 1969), for example, the New Hampshire Supreme Court stated, "In the absence of contrary provision by statute or constitution, a municipality's title to such property is absolute so that a town is free from either legal or equitable claims by the taxpayer to any surplus realized." (Citations omitted.) In *Nelson v. New York*, 352 U.S. 103 (1956), the United States Supreme Court rejected a claim under the Takings Clause when the municipality sold the plaintiff's property for $7000—to satisfy a $65 tax delinquency—and retained the proceeds. *Id.* at 105-06. The Court concluded that "nothing in the Federal Constitution prevents this where the record shows adequate steps were taken to notify the owners of the charges due and the foreclosure proceedings."[6] *Id.* at 110; *see Coleman v. Scheve*, 367 A.2d 135 (D.C. 1976); *Kelly v. City of*

---

[6] The Ritters argue to the contrary, maintaining that *United States v. Lawton*, 110 U.S. 146 (1884), and *Bogie v. Town of Barnet*, 270 A.2d 898 (Vt. 1970), require the taxing entity to return the surplus from the foreclosure sale to the taxpayer under the Takings Clause. We disagree. *Lawton* and *Bogie* are distinguishable because in both cases the Court determined that the statutory framework of the applicable tax legislation required any excess proceeds to be returned to the taxpayer. Indeed, in *Nelson v. New York*, 352 U.S. 103, 109-10 (1956), the Court distinguished *Lawton*—a case it decided seventy years earlier—on that very basis.

*Boston*, 204 N.E.2d 123 (Mass. 1965); *City of Auburn v. Mandarelli*, 320 A.2d 22 (Me. 1974).[7]

Thus, when a state's constitution and tax codes are silent as to the distribution of excess proceeds received in a tax sale, the municipality may constitutionally retain them as long as notice of the action meets due process requirements.[8] We have not been referred to any applicable provision of the Wisconsin Constitution, and we see nothing in chapter 75, STATS., either directing or relating in any way to distribution of surplus funds after a tax sale.[9] Indeed, the Wisconsin Supreme Court, in *Oosterwyk v. Milwaukee County*, 31 Wis. 2d 513, 143 N.W.2d 497, *cert. denied*, 385 U.S. 981 (1966), upheld Milwaukee County's retention of a

---

[7] In *City of Auburn v. Mandarelli*, 320 A.2d 22, 31 (Me. 1974), the court noted that the Supreme Court has affirmed at least two federal district court cases holding to the same effect. *See, e.g., Catoor v. Blair*, 358 F. Supp. 815 (N.D. Ill.), *aff'd*, 414 U.S. 990 (1973); *Balthazar v. Mari, Ltd.*, 301 F. Supp. 103 (N.D. Ill.), *aff'd*, 396 U.S. 114 (1969); *see generally Bender v. City of Rochester*, 765 F.2d 7 (2d Cir. 1985).

[8] We consider the Ritters' due process claims in Part III of this opinion.

[9] With respect to homestead property, since 1987, § 75.36, STATS., has required distribution of tax-sale surplus to the owner if the property had been used as a homestead within five years of the foreclosure. 1987 Wis. Act 378, §§ 120, 122. The Ritters contend that this change in the statute "should be interpreted as an implicit recognition by the legislature that the County never had the right to retain excess property under the statutes." We disagree. First, there is no claim here that the Ritters ever used the foreclosed property as a homestead. Second, if the legislature had intended to mandate the distribution of excess proceeds for *all* property foreclosures, rather than just homestead property, it would have amended § 75.521 as well—which, of course, it did not.

$12,000 tax-sale surplus against various state-law challenges, stating that, even though a municipality may benefit by retaining the surplus, when it acquires fee-simple title to property via a tax deed and sells it, "[the] owner . . . is not entitled to any surplus unless the legislature chooses to provide therefor." *Id.* at 517, 143 N.W.2d at 499.

We conclude that, under *Spurgias*, *Nelson*, and similar cases, the Ritters' claim under the Takings Clause resolves into a question of the adequacy of the County's notice under traditional due process considerations.

## III. Adequacy of the County's Notice

### A. *Notice of the Pendency of the Action*

As indicated above, the trial court concluded that the notice of the commencement of the foreclosure proceedings was constitutionally adequate, and the Ritters challenge that ruling on appeal.

Due process is a "flexible concept" that requires only such procedural protections "as the particular situation demands." *Estate of Wolff v. Town Bd.*, 156 Wis. 2d 588, 594, 457 N.W.2d 510, 512 (Ct. App. 1990). It is a concept that must give "due regard for the practicalities and peculiarities of the case" at hand. *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314-15 (1950).

Section 75.521(3), STATS., governs the commencement of foreclosure proceedings. Under its provisions, the treasurer first files a list of properties "affected by unpaid tax liens" with the clerk of circuit court. Section 75.521(3)(a). The list must include

descriptions of each parcel "sufficient to identify" them and include the owners' names and the amount of the lien on each property. Section 75.521(3)(am). The filing of the list is deemed to constitute the commencement of a foreclosure proceeding against each listed parcel. Section 75.521(3)(b). A "copy of the petition and so much of the list of tax liens as shall include the description of a particular parcel" must then be sent by certified or registered mail to "each . . . owner of record," and any other person or entity having an interest in the land or the tax liens. Section 75.521(3)(c). At the time the list is filed with the court, the county must publish a public notice of the commencement of the proceeding with identifying information and notice of the right to redeem the liens within a specified period of time. Section 75.521(6). The statute specifies the language the notice must contain.

Succeeding subsections of § 75.521, STATS., describe the property owners' rights, including the right to redeem the liens or "be forever barred and foreclosed of all . . . right, title and interest in and to the [described] parcel" as well as the owners' rights to challenge the foreclosure in various respects. Section 75.521(5), (7).

The Ritters do not challenge the County's compliance with the procedural requirements of § 75.521(3), STATS. They acknowledge receiving all of the materials the statute requires. Their argument is that the notices are nonetheless constitutionally inadequate for failing to advise them of the provisions of § 75.521(7) relating to their right to file an answer to the foreclosure petition.

They begin by referring us to *Memphis Light, Gas & Water Division v. Craft*, 436 U.S. 1, 14-15 (1978), where the Supreme Court held that due process

required utility companies to notify customers of the opportunity to contest disputed bills before their service could be terminated. The Court makes clear, however, that it considered the termination of utility service to be a special situation because of the health and safety concerns that accompany cessation of heat, light and water services. *Id.* at 14 n.15, & 18. The Court noted in that regard, for example, "In a different context a person threatened with the deprivation of a protected interest need not be told 'how to complain.' " *Id.* at 14 n.15. We are not at all persuaded that *Memphis Light* requires such expanded notice with respect to a tax sale of real estate such as the Ritters'.

Indeed, the Wisconsin Supreme Court recognized in *Chicago & North Western Transportation Co. v. Pedersen*, 80 Wis. 2d 566, 572-73, 259 N.W.2d 316, 319 (1977), that the notice requirement for an *in rem* proceeding for collection of property taxes is "less stringent" than that required in lawsuits generally.[10] Specifically addressing due process requirements in the context of a notice of foreclosure sale under § 75.521, STATS., the court stated:

> "As applied to the proceedings for the levy and collection of taxes, due process 'does not imply or require the right to such notice and hearing as are deemed essential to the validity of the proceedings and judgments of judicial tribunals.'

---

[10] *Chicago & North Western Transportation Co. v. Pedersen*, 80 Wis. 2d 566, 259 N.W.2d 316 (1977), involved, among other things, a challenge to the notice provisions of a law providing for the loss of mineral rights in land. The case relied on by the *Pedersen* court for the quoted proposition, however, *Devitt v. City of Milwaukee*, 261 Wis. 276, 52 N.W.2d 872 (1952), involved, as we note above, a real-estate tax foreclosure proceeding under § 75.521, STATS.

. . . .

The process of taxation . . . . involves no violation of due process of law, when it is executed according to customary forms and established usages . . . ."

*Devitt v. City of Milwaukee*, 261 Wis. 276, 279, 52 N.W.2d 872, 873 (1952) (quoted sources omitted).

We note, too, that the subsection to which they refer, § 75.521(7), STATS., is more a limitation on the general right to answer a complaint or petition than it is a grant of special rights. It states, for example, that any person with an interest in or lien upon one of the parcels listed in the petition may answer and object to foreclosure "upon one or more of the following grounds only": (1) the property was not subject to taxation; (2) the taxes were timely paid; or (3) the tax lien is barred by the statute of limitations. Section 75.521(7)(a)1-3. The statute goes on to state, "No other defense . . . shall be set up" to the petition. Section 75.521(7)(b).

More importantly, the notices required under § 75.521, STATS., for commencement of foreclosure proceedings—notably those found in § 75.521(3)(c)—were specifically upheld against a due process challenge in *Devitt*, 261 Wis. at 284, 52 N.W.2d at 876. Important to the court's holding in that case was its recognition that, long before the process reaches this stage,

other statutes have provided for notice to the taxpayer of assessment; opportunity to examine the tax rolls; time and place of hearing before the board of review; time, place and method of payment; delinquency; sale; time limitation for redemption, etc. . . . Such notice is sufficient to satisfy the requirements of due process.

*Id.* at 278, 52 N.W.2d at 873. The record in this case indicates that here, as in *Devitt*, all the i's were dotted, and all the t's crossed.[11]

■

We therefore agree with the trial court that the notices received by the Ritters were reasonably calculated to apprise the Ritters of the pendency of the foreclosure action, afforded them an opportunity to present their objections and were thus constitutionally adequate.

### B. *Notice of Possible Retention of Surplus Sale Proceeds*

■

The County's cross-appeal challenges the trial court's conclusion that the Ritters' due process rights were violated because the County's notices failed to specifically advise them that any surplus proceeds from the foreclosure sale of their property were subject to possible retention by the County. We think the

---

[11] The Ritters also argue that the notice of foreclosure they received failed to comply with § 75.521(3)(c), STATS., because, while the statute says that the owner should receive, along with the petition, "so much of the list of tax liens as shall include the description of a particular parcel," the list they received included many other parcels besides their own. Their argument boils down to this: sending them more pages of the foreclosure list than was required constitutes noncompliance with § 75.521 (3)(c). We agree with the Ritters that taking of land by the government for failure to pay property taxes is a "very drastic measure," requiring strict compliance with statutory procedures, *Waukesha County v. Young*, 106 Wis. 2d 244, 249, 316 N.W.2d 362, 365 (1982), but we do not think sending the full list violates either the letter or the spirit of § 75.521(3)(c).

491

County's arguments are well taken, and we reverse on this issue.

We have just outlined the many notices provided delinquent property taxpayers along the path from delinquency to foreclosure. For the Ritters those procedures began in 1985 with the County's notice that it did not receive payment of the second half of their 1984 taxes. Correspondence between the Ritters and the County regarding the delinquent payment continued from 1985 until late 1988. Then, in December 1988, the Ritters were advised that, because of the 1984 delinquency, the County would be "taking th[eir] property," and that it was "very important" that they come to Ross's office to cure the problem. When the Ritters did nothing in response, except mail another copy of the money order and ledger in January 1989, the proceedings were commenced, pursuant to statutory notice, in July 1989.

In *Devitt*, the supreme court noted that, as a result of these and the many other applicable statutory procedures, a taxpayer, exercising "reasonable diligence in the preservation of his [or her] interests," is apprised of every significant detail of the process, from the assessment to the levy, and from collection to foreclosure. *Devitt*, 261 Wis. at 280, 52 N.W.2d at 874. As a result, said the court, "it has been uniformly held that tax statutes may adopt a procedure summary in nature and that notice of such proceedings need not be more than reasonably adequate to afford the owner an opportunity to protect his property." *Id.*

There is no statutory requirement for a notice such as that argued by the Ritters, nor are we persuaded that due process requires such a notice. New York's highest court rejected such a claim in *Sheehan v. County of Suffolk*, 490 N.E.2d 523, 525 (N.Y.), *cert.*

*denied, MacKechnie v. County of Sullivan*, 478 U.S. 1006 (1986), holding that "[t]here is no unfairness, much less a deprivation of due process, in the county's retention of any surplus" from a property tax foreclosure sale. The court began its analysis with the "well-settled proposition" that property owners are charged with knowledge of the laws affecting their property. *Id.* It went on to state: "Due process does not require that every taxpayer be advised of the possible consequences attaching to a default in payment. Once taxpayers are provided with notice and an opportunity to be heard on the adjudicative facts . . . they have received all the process that is due." *Id.* (citations omitted).

We follow a similar rule in Wisconsin. In *State v. Iglesias*, 185 Wis. 2d 117, 143, 517 N.W.2d 175, 184, *cert. denied*, 115 S. Ct. 641 (1994), for example, the supreme court said, " 'It is well established that persons owning property within a State are charged with knowledge of relevant statut[es] affecting the control or disposition of [their] property.' "[12] (Quoted source omitted.) As the court noted in *Devitt*:

> When an individual acquires real estate he is presumed to know what the law provides with respect to the taxation and condemnation of land. If he exercises reasonable diligence in the preservation of his interests, he is apprised of tax assessments, the time, place and manner of

---

[12] The supreme court has also said, " 'It is deemed that every person is bound to know the law, and to take notice of what is transpiring in the courts, from the time when the process is served and the complaint filed until the final judgment is entered.' " *Belleville State Bank v. Steele*, 117 Wis. 2d 563, 571 n.5, 345 N.W.2d 405, 409 (1984) (quoting *Brown v. Cohn*, 95 Wis. 90, 93, 69 N.W. 71, 72 (1897)).

payment, etc. If he has not sought to protect his property against the lien of delinquent taxes, it is subject to the final step in the . . . procedure of collection, foreclosure. Consequently, it has been uniformly held that tax statutes may adopt a procedure summary in nature and that notice of such proceedings need not be more than reasonably adequate to afford the owner an opportunity to protect his property.

*Devitt*, 261 Wis. at 280, 52 N.W.2d at 874; *see Waukesha County v. Young,* 106 Wis. 2d 244, 250-51, 316 N.W.2d 362, 365 (1982).

After failing to take advantage of numerous opportunities to remedy their default over a three-year period, the Ritters finally received notice of the foreclosure proceedings—and in the course of that notice were told of their right to avoid the sale by redeeming the $84.43, and the serious consequences of a failure to do so; yet they continued to do nothing.

We have noted above that the "flexible" nature of due process requires only such notice as may be demanded under the particular circumstances of the case. *Estate of Wolff*, 156 Wis. 2d at 594, 457 N.W.2d at 511. Notice of the foreclosure and sale of property has been held adequate under the Due Process Clause if it is "reasonably adequate to afford the owner an opportunity to protect his property." *Devitt*, 261 Wis. at 280, 52 N.W.2d at 874. Considering *Sheehan, Devitt* and similar cases, we conclude that due process does not mandate that the foreclosure notices required by § 75.521 also state the possibility that, should the tax lien be foreclosed and the property sold, the municipality might elect to retain any surplus proceeds from the sale over and above the amount of its lien.

Because the County's notices satisfied applicable due process requirements, the Ritters' challenges to the foreclosure proceedings must fail.

*By the Court.*—Judgment reversed and remanded with directions.