Ran-Mar Inc. v. Town of Berlin, No. 499-9-04 WnCv  (Katz, J., June 27, 2005)

[The text of this Vermont trial court opinion is unofficial.  It has been reformatted from the original.  The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]


STATE OF VERMONT                                        SUPERIOR COURT
Washington County, ss.:                              Docket No. 499-9-04Wncv


RAN-MAR, INC.

v.

TOWN OF BERLIN


ENTRY


    Plaintiff-Taxpayers, related corporate entities, seek to set aside the tax sales of several of their properties, arguing that the Town of Berlin improperly determined the amounts collectible by 32 V.S.A. § 5254 tax sales (by recovering interest on the delinquencies), and unlawfully retained excess proceeds from the sales during the periods of redemption.  They seek damages too.[1]

    Section 5254 allows a town to collect delinquent taxes by tax sale of the subject property.  Taxpayers argue that § 5254 specifically bars the

_____

[1] We recognize here Taxpayers' concessions that their 42 U.S.C. § 1983 claim should be dismissed, and Joadi Tracey, no longer the Town's delinquent tax collector, should be dismissed as a defendant.

collection of interest and penalties as part of the sale. Section 5254 states, "When the tax with costs and fees is not paid before the day of sale, the real property on which the taxes are due shall be sold to pay such taxes, costs and fees." Taxpayers reason that "penalties" and "interest" cannot be collected by tax sale because they do not appear in § 5254, and tax statutes must not be extended by implication. See *Portland Pipe Line Corp. v. Morrison*, 118 Vt. 417, 420 (1955).

We need not address this argument with regard to "penalties" because the expense repeatedly referred to by Taxpayers, as well as the Town until its most recent filing, is a "fee," not a penalty. It is the eight percent "collector's fee" authorized in 32 V.S.A. §§ 1674, 5258. With no allegation of any other "penalty," we regard this issue as moot.

The Town has collected 32 V.S.A. § 5136(a) interest on the taxes due from the proceeds of the tax sales. Though no statute so requires, Taxpayers argue that such interest must be collected by some method other than a tax sale, if at all. While we will not extend a tax statute "by implication," our paramount goal in interpreting a tax statute, as any other, is to ascertain the intent of the Legislature. And, "The intention of the legislature is to be ascertained, not from the literal sense of the words used, but from a consideration of the whole and every party of the statute, the subject matter, the effects and consequences and the reason and spirit of the law." *Portland Pipe Line Corp.*, 118 Vt. at 420.

Taxpayers' argument is wholly implausible. While interest owed on overdue taxes is not specifically listed in § 5254, we suspect that it is omitted only because it is considered to be an element of the tax obligation that bears it. Nothing in the relevant statutes specifically states how and interest obligation must be collected, or suggests that it should be collected separately from the delinquent tax that bears it. Its collection by tax sale is subject to the same procedural protections as other aspects of the tax sale. We perceive no meaningful basis whatsoever for excluding the collection of interest from § 5254, which, in the context of the statutory scheme, we do not find ambiguous. We will not presume that the Legislature would

authorize—by vote, no less, 32 V.S.A. § 5136—the imposition of interest and then impliedly bar its collection by the usual enforcement routes.

Each of the tax sales generated what is commonly known as "excess proceeds," the positive difference between the tax sale price and the amount due the Town. The Town escrowed the excess for the duration of the redemption periods, after which it promises to make an accounting and disburse the funds. See generally 32 V.S.A. § 5260 (redemption). The Town expressly claims no title of its own to the excess proceeds. Taxpayers calculate that the excess proceeds from some of the sales would be sufficient to enable them to redeem properties that were subject to other sales if only they could get their hands on those proceeds prior to the end of the latter redemption periods. They claim a statutory right to the immediate disbursement of the excess proceeds at the time of the tax sale, and claim that any delay in disbursement amounts to an unconstitutional taking of their property.

We begin by noting that there is no statutory basis for analyzing this issue any differently because Taxpayers have several properties involved in the tax sale process at the same time, rather than just one. Relevant statutes make no distinction between the tax sale of one property and the concurrent tax sales of multiple properties. The issue is whether the Town must deliver excess proceeds from any particular tax sale to the former owner prior to the end of that sale's period of redemption.

There is no express statutory right of a former owner to the disbursement of excess proceeds prior to the end of the period of redemption. Indeed, Vermont statutes make no provision whatsoever for the disposition of excess proceeds. Taxpayers' statutory argument is premised on the belief that they must have the right to immediate disbursement unless Vermont statutes specifically state otherwise. Because Taxpayers view any delay in the return of excess proceeds to be an unconstitutional taking, however, presumably they would argue that any statute to the contrary is unconstitutional.

3

Taxpayers cite numerous cases on the general subject of takings law, but none are on point. Generally, taxpayers have "a recognizable interest in the excess proceeds from [a tax sale] only if the state constitution or tax statutes create such an interest." *Ritter v. Ross*, 558 N.W.2d 909, 912 (Wis. App. 1996). Without a constitutional or statutory right, they have no such interest. *Id*.

Taxpayers' argument in this case is extrapolated from *Bogie v. Town of Barnet*, 129 Vt. 46 (1970). In *Bogie*, the Vermont Supreme Court concluded that 32 V.S.A. § 5259 (which allows the Town to purchase a property at a tax sale if there are no other bids equal at least to the amount due the Town) requires the return of a surplus to the former owner after a resale by the town to a third party. In that case, the Town acquired the property for the amount due, but just after the end of the redemption period sold it to a third party for an amount significantly in excess of the purchase price, generating a "surplus." The Court ruled, as a matter of statutory interpretation, that in such cases the "measure of recovery [for the Town] is determined by the extent of the tax obligation, and there is no excess to dispose of." Id. at 54 (on reargument). The *Ritter* Court distinguished *Bogie*, and its reliance on *U.S. v. Lawton*, 110 U.S. 146 (1884), see *Bogie*, 129 Vt. at 49, from a more general claim of right to excess proceeds as follows:

> The Ritters argue . . . that *United States v. Lawton*, 110 U.S. 146 (1884), and *Bogie v. Town of Barnet*, 129 Vt. 46 (1970), require the taxing entity to return the surplus from the foreclosure sale to the taxpayer under the Takings Clause. We disagree. *Lawton* and *Bogie* are distinguishable because in both cases the Court determined that the statutory framework of the applicable tax legislation required any excess proceeds to be returned to the taxpayer. Indeed, in *Nelson v. New York*, 352 U.S. 103, 109-10 (1956), the Court distinguished *Lawton*—a case it decided seventy years earlier—on that very basis.

4

*Ritter*, 558 N.W.2d at 912 n.6. Thus, Taxpayers' takings argument really adds nothing to their statutory argument.

Looking more closely, then, to relevant Vermont statutes, we note that 32 V.S.A. § 5254 was amended in 1995. Prior to amendment, § 5254 required a town to sell only so much of the property as was necessary to recoup the amounts due the town from the delinquency. Technically, there could be no "excess proceeds" under such a regime because a tax sale should never generate more than necessary to cover the taxpayer's obligation. In cases where gross disparities did arise, towns were faulted for selling more land than necessary, and the sales were set aside. See, e.g., *Price v. Leland*, 149 Vt. 518, 522 (1988); *Peterson v. Moulton*, 120 Vt. 439, 442 (1958). This affirmative requirement of the town's in § 5254 was eliminated by the amendment. Section 5254 now requires a landowner to request that only a portion of the property be sold, and to prove that it may be so subdivided lawfully prior to the tax sale. There is no allegation of such a request in this case. In that event, as here, the town sells the whole property. 32 V.S.A. § 5254(a). Consequently, we view Taxpayers' reliance on pre-amendment § 5254 cases as misplaced.

We decline to extend the constitutional considerations of *Bogie* to the circumstances of this case. The *Bogie* Court made clear that its circumstances were "special":

> We construe the authority given to the municipality to bid at a tax sale as an ultimate recourse given to protect the town against any conspired attempts to avoid the sale by discouraging all bidding. 32 V.S.A. § 5259 indicates that the position of the municipality as a bidder is a special case, by denying to it authority to bid at all unless no bid equal to the tax and costs is made at the sale. A policy which encouraged municipal governments to promote situations where it was authorized to acquire the property of its own taxpayers at unconscionable discounts, to the enrichment of the town treasury or enlargement of its land holdings, is fraught with

5

danger and we find not contemplated by the legislative enactment.

*Bogie*, 129 Vt. at 49.  A tax sale under § 5254, particularly where, as here, the town does not seek title to excess proceeds, does not present the same concerns.

We resolve the issue, then, with an emphasis on equitable considerations.  See <u>Poulin v. Towns of Danville & Cabot</u>, 128 Vt. 161, 165 (1969) ("equity has jurisdiction in tax matters").  In this regard, we cannot see why equity should favor Taxpayers in this case.  Taxpayers are responsible for their delinquencies, and responsible for not exerting their subdivision rights under 32 V.S.A. § 5254(b).  Considering the number of lienholders on the properties sold at the tax sale—which have the right of redemption along with Taxpayers—it is evident that Taxpayers may not have any ultimate right to excess proceeds anyway.  Placing those proceeds in Taxpayers' hands prior to the end of the redemption periods, rather than in escrow, would accomplish little other than unnecessarily introducing a risk of loss of those proceeds.  Taxpayers' implied argument that it is unfair for the Town to refuse their request for a refund during the period of redemption is not well received.  "Those who seek equity must be prepared to give equity."  <u>Shell Oil Co. v. Jolley</u>, 130 Vt. 482, 491 (1972).

Defendants' motion for judgment is granted.

Dated at Montpelier, Vermont, _____, 20___.


_____
Judge

6