Scott E. POCIUS, Plaintiff-Appellant,†

v.

KENOSHA COUNTY, Frieda M. Jacobson, Village of Silver Lake and Sharon L. Kerkman, Defendants-Respondents.

Court of Appeals

*No. 98–3176. Submitted on briefs September 14, 1999.—Decided November 24, 1999.*

(Also reported in 605 N.W.2d 915.)

†Petition to review denied.

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Gary W. Thompson* of *Thompson Law Offices* of Milwaukee.

On behalf of the defendants-respondents, Kenosha County and Frieda M. Jacobson, the cause was submitted on the brief of *Raymond J. Pollen* and *Michele M. Ford* of *Crivello, Carlson, Mentkowski & Steeves, S.C.* of Milwaukee. On behalf of the defendants-respondents, Village of Silver Lake and Sharon L. Kerkman, the cause was submitted on the brief of *Michael J. Cieslewicz* and *Christine D. Esser* of *Kasdorf, Lewis & Swietlik, S.C.* of Milwaukee.

Before Brown, P.J., Nettesheim and Snyder, JJ.

¶ 1.   NETTESHEIM, J.   Scott E. Pocius appeals from summary judgments in favor of Kenosha County and its treasurer, Frieda M. Jacobson, and the Village of Silver Lake and its clerk, Sharon L. Kerkman. In the trial court, Pocius challenged the validity of a tax deed recorded in favor of Kenosha County for his failure to

pay real estate taxes. Pocius claimed that the Village did not follow the law governing preparation and maintenance of the tax roll and that the County did not follow the law governing tax deed foreclosure. Pocius claimed that these failings deprived him of his procedural due process rights. As relief, Pocius asked the trial court to void the tax deed and to award him damages pursuant to 42 U.S.C. § 1983 (1994), for the alleged due process violations.

¶ 2. We conclude that the Village and County complied with all statutorily mandated procedures, thereby providing Pocius with adequate due process. Consequently, we affirm the trial court's grant of summary judgment dismissing the claims against the Village and County and the individual claims against the village clerk and the county treasurer.

## FACTS

¶ 3. The underlying facts, while lengthy, are largely undisputed. Pocius originally resided at 34236 Homestead Road in Gurnee, Illinois. On March 13, 1992, he moved to Salem, Wisconsin. Because of this move, Pocius arranged with the post office to forward his Homestead Road mail to a post office box in Gurnee, which was the business address for his general contracting company, Ridgefield Builders.[1] During this time, Pocius arranged to purchase two lots located in the Village of Silver Lake, Kenosha County: Lot 3, C.S.M. No. 1254 (Lot 3) and Lot 4, C.S.M. No. 1261 (Lot 4). The lot at issue in this case is Lot 3.

---

[1] Pocius gave conflicting accounts as to when he arranged to forward his mail. In an affidavit, Pocius stated that he made the arrangement about two weeks prior to March 13, 1992, when he moved to Salem, Wisconsin. In his deposition, he stated that he made the forwarding arrangement on March 11, 1992.

¶ 4. The warranty deed and the transfer tax return were both executed on March 31, 1992. The warranty deed showed Pocius's address as the Gurnee post office box. However, the transfer tax return as executed by Pocius listed his address as the former Homestead Road address. The transfer tax return is a critical document because it directs where the treasurer should send the real estate tax bill for the property. On June 25, 1992, Pocius again moved, this time to 1819 Joanna Street in Zion, Illinois.

¶ 5. In due course, the Village prepared the 1992 tax roll. Relying on the address that Pocius had provided in the transfer tax return, the Village used Pocius's Homestead Road address. The Village then forwarded the tax roll to Kenosha County, which prepared the actual tax bills. The County then returned the tax bills to the Village, which mailed them to the property owners. Pocius received this bill at his company's Gurnee post office box pursuant to the forwarding directive he had previously arranged with the post office. Pocius paid the first installment of the tax bill by a check drawn on his company's account. The check recited the Gurnee post office box as the company's address. Pocius signed the check.

¶ 6. Thereafter, the forwarding service from the post office expired. Thus, Pocius never received a reminder sent by the County for the second installment. Nor did he receive any further tax bills for the ensuing years or any of the future correspondence and notices relating to the County's acquisition of title to Lot 3 by the eventual tax sale and deed.

¶ 7. On June 1, 1993, Pocius sold Lot 4. Shortly after the sale, Pocius received a telephone call from the Lot 4 buyers asking him to pay his share of the sewer bill for this property that had accrued before the sale.

In response, Pocius went to the Village offices on August 27, 1993, to address the Lot 4 matter. During this meeting, Pocius claims that a Village employee told him that some mail that had been sent to him had been returned. Pocius further claims that he then advised the employee of his Gurnee post office box address. No specific mention of Lot 3 was made during this visit. Pocius assumed that his report of his address change would cover Lot 3, since it was the only lot that he still owned at the time. However, the Village continued to send all future correspondence and notices to Pocius's former Homestead Road address.

¶ 8.   On August 25, 1993, pursuant to § 74.57, STATS., Kenosha County Treasurer Frieda Jacobson issued a master tax certificate for Lot 3 due to Pocius's failure to pay the property taxes. The tax certificate indicated that the County would be entitled to obtain a tax deed to the property in two years unless the property was redeemed in accordance with state law. On October 4, 1993, pursuant to § 74.59, STATS., the County mailed a copy of the master tax certificate to Pocius's former Homestead Road address. This mailing included a letter giving notice that the tax certificate had been issued. About a year later, in the fall of 1994, the County mailed Pocius a letter advising that if he redeemed the property by December 31, 1994, he could avoid publication in the newspaper for delinquent taxes.

¶ 9.   On January 19, 1996, the County mailed Pocius an invoice indicating the amount of back taxes owed. The invoice stated that the taxes had to be paid by February 29, 1996. On the same date, along with the invoice, the County mailed by certified mail a Notice of Application for Tax Deed pursuant to § 75.12, STATS. The notice stated that the County would apply for a tax

deed for the property three months from the date of service of the application. All of these mailings were also sent to Pocius's former Homestead Road address.

¶ 10. The post office returned the Notice of Application and invoice, along with the receipt for certified mail with a stamped notation, "Forwarding Order Expired." The application was then published in a local newspaper three times between February 16 and March 1, 1996, as required by § 75.07(1), STATS. Finally, on July 30, 1996, the county clerk recorded the tax deed for Lot 3 in favor of Kenosha County for failure to pay delinquent taxes.

¶ 11. During the fall of 1996, as Pocius was planning to construct a residence on Lot 3, he learned that the County had acquired title to the property by tax deed. In response, Pocius called the Village. According to Pocius, someone representing the Village told him that he may be able to recover the property by paying the back taxes, but that he would have to speak with the county treasurer. The following day, Pocius visited the Village offices to investigate what had happened regarding the change of address information that he had provided during his August 1993 visit. According to Pocius, he spoke to the same employee to whom he had provided the change of address information in 1993, but she did not recall the 1993 visit.

¶ 12. Pocius waited until the summer of 1997 before finally contacting Jacobson, the Kenosha County treasurer. Jacobson listened to Pocius's side of the story and then allegedly told him "the law is the law and [my] hands are tied" and that his only recourse was to repurchase the property at the foreclosure sale. On July 28, 1997, Pocius's attorney sent a Notice of Claim to the Kenosha County clerk purporting to make a claim pursuant to § 893.80, STATS., against the County.

¶ 13.   Later that summer, on August 19, 1997, Pocius attended a meeting held by the Village at which he was given an opportunity to explain how the Village had erred and why the property should be retitled in his name. The Village rejected Pocius's plea.

¶ 14.   Pocius then initiated this action. He stated claims for procedural due process violations and other civil rights violations under § 1983. The claims were based on Pocius's allegations that the Village had improperly prepared and maintained the tax roll and that the County had failed to follow the statutes governing tax deed foreclosure. Pocius sought a declaratory judgment declaring the tax deed void and money damages. Alternatively, he sought damages for inverse condemnation of his property.[2]

¶ 15.   All parties moved for summary judgment. After hearing the arguments on the motions, the trial court granted summary judgment to the County, the Village and their officers. Pocius appeals.

## DISCUSSION

■

¶ 16.   Motions for summary judgment are reviewed using the same methodology used by the trial court. *See M & I First Nat'l Bank v. Episcopal Homes Management, Inc.*, 195 Wis. 2d 485, 496, 536 N.W.2d 175, 182 (Ct. App. 1995). We will not repeat this well-known methodology here except to observe that summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a mater of law. *See id.* at 496–97, 536 N.W.2d at 182. Although summary judg-

---

[2] Pocius does not appeal the trial court's dismissal of his inverse condemnation claim.

ment presents a question of law to be reviewed de novo, we still value the trial court's decision on the question. *See id.* at 497, 536 N.W.2d at 182.

¶ 17. Pocius's arguments on appeal, while numerous, are premised on two basic claims: (1) the Village improperly prepared and maintained the tax roll; and (2) the County failed to follow the applicable statutes governing tax sale foreclosure.

### 1. Failure to Prepare and Maintain Tax Roll

¶ 18. Pocius argues that had his correct address been included on the Village tax roll: (1) the Village would have sent his tax bills to his Gurnee post office box, (2) the taxes would have been paid, and (3) Lot 3 would still be his.

¶ 19. Crucial to this argument is the August 27, 1993 visit that Pocius made to the Village offices regarding the sewer matter involving Lot 4. Pocius contends that he provided the Village with notice of his change of address during this visit. From that, he assumed that all future mail from the County or Village would be sent to the Gurnee post office box address. In his deposition, Pocius described the exchange with the Village employee as follows:

> What was said was [the Village] sent some correspondence to you and we've received it back, and she indicated there must be some problem with the address and I said let me give you my correct address. That's when I gave [the employee] my correct post office box 478 in Gurnee. She wrote it down and filed it away.

¶ 20. The County and Village have a different view of this exchange, assuming it occurred. They contend that the exchange was simply too ambiguous to

fairly alert the Village that Pocius was the owner of Lot 3, or that the employee's comment about returned mail related to unpaid taxes on Lot 3. At best, the County and Village contend that the address correction discussion pertained to Lot 4.

¶ 21. Like the trial court, we will assume that the exchange took place. However, it is obvious that Pocius and the Village are like ships passing in the night with regard to this exchange. We do not question that Pocius might reasonably conclude from his perspective that the change in address information would apply to Lot 3. But the more pertinent inquiry is how this information registered with the Village, the entity charged with properly preparing the tax roll.

¶ 22. When Pocius arrived at the Village offices on August 27, 1993, the Village representatives had no knowledge that he was the owner of Lot 3. They did quickly learn that Pocius was the owner of Lot 4 since the sewer bill pertaining to that lot was the purpose of his visit. *It is undisputed that Lot 3 was never discussed during the course of Pocius's visit.* During this visit, a Village employee volunteered that some mail sent to Pocius had been returned and Pocius responded by providing his mailing address. But this discussion occurred in a vacuum. It was not linked to any particular topic, much less to Pocius's status as a property owner who was delinquent in the payment of his real estate taxes.

¶ 23. We reject Pocius's contention that this ambiguous exchange revealed to the Village with sufficient prominence that Pocius was the owner of Lot 3 such that it was duty bound to correct its tax roll accordingly. At most, the Village was put on fair notice that Pocius was the former owner of Lot 4 and that any future correspondence as to that lot should be mailed to

the address he had provided. We do not conclude that this exchange required the Village to examine all of its records, including the ownership records of all real estate in the Village, to determine if Pocius's name appeared in any of this data.

¶ 24.   From this holding, it follows that we must also reject Pocius's related argument that certain of the statutes governing property tax rolls placed a duty on the Village to update its records regarding his address. Pocius reads §§ 70.47(6), 70.52 and 70.65(2)(a)1, STATS., as combining to create such a duty.[3] We disagree. Section 70.65(2)(a)1 states that the tax roll shall identify all property and the name and address of the owner. Sections 70.47(6) and 70.52 create duties to examine and correct the tax rolls. Section 70.47(6) applies to the board of review and requires that the board "carefully examine the roll . . . and correct all *apparent errors.*" (Emphasis added.) Section 70.52 applies to the clerk and requires that he or she "correct . . . errors *apparent upon the face* of the roll . . . ." (Emphasis added.) As we have already held, nothing in the August 27, 1993 exchange would suggest to the Village that there was an "apparent" error in the tax roll as it pertained to Pocius.

¶ 25.   In short, Pocius seeks to shift the blame from himself to the Village. As noted, the transfer tax return is prepared by the owner of the property and

---

[3] Pocius also raises statutory arguments based upon §§ 70.502 and 70.503, STATS., that are premised upon the status of Sharon Kerkman, the Village clerk, as a member of the village board of review. However, these statutes require intentional or fraudulent conduct before the penalties or damages envisioned by the statutes may be imposed. None of Pocius's allegations against Kerkman even remotely suggest that egregious level of conduct.

instructs the taxing authority where to send the real estate tax bill. Pocius simply provided the wrong information to the Village when he executed this document. This error did not frustrate the delivery of the initial tax bill from the Village because Pocius had instructed the post office to forward his mail to the Gurnee post office box address. However, Pocius then compounded his initial error by allowing the forwarding address directive to lapse. Thereafter, Pocius took no further steps to reactivate that directive or to unambiguously advise the Village of his correct address for property tax purposes.

¶ 26.  Pocius further argues that the County and Village were put on notice of his correct address because it was printed on the check that paid the first installment on the 1992 taxes. But the check was drawn on the account of Pocius's company, Ridgefield Builders. Although Pocius signed the check, there was nothing that would indicate to an objective observer that the address for Ridgefield Builders was also Pocius's address. As with the August 27, 1993 exchange, this event did not sufficiently alert the County or the Village as to Pocius's actual address.

█

¶ 27.  A principle of real estate tax law supports our conclusion. "When an individual acquires real estate he is presumed to know what the law provides with respect to the taxation and condemnation of land." *Devitt v. City of Milwaukee*, 261 Wis. 276, 280, 52 N.W.2d 872, 874 (1952). As a property owner, Pocius was charged with the knowledge that property taxes are assessed and must be paid. This is especially true in light of the fact that Pocius received a real estate tax bill that listed due dates for both installments. While there may be instances in which the failure to pay real

estate taxes may be forgiven and the property can be redeemed because the taxing authority acted in disregard of actual or constructive knowledge of the property owner's address, this is not such a case. As we have demonstrated, the fault in this case lies with Pocius, not the County or the Village.

### 2. Due Process Violations

¶ 28. Pocius advances two procedural due process arguments regarding the County's conduct. First, he contends that the County was constitutionally required to provide him actual notice of the tax sale proceedings based upon the United States Supreme Court's opinion in *Mennonite Board of Missions v. Adams*, 462 U.S. 791 (1983).[4] There, the property owner had failed to pay real estate taxes on property that was subject to a mortgage. The taxing authority initiated tax sale proceedings and the property was eventually sold at the tax sale. Notice of the sale was provided by certified mail to the owner. However, as to others, including the mortgagee, notice was provided only by the posting of a notice and by publication. *See id.* at 794. The mortgagee first learned of the sale when the tax sale purchaser sought to quiet title. *See id.* at 794–95.

---

[4] The County argues that we should reject Pocius's argument on a threshold basis because Pocius is really challenging the constitutionality of the tax deed statutes, and Pocius has failed to provide the requisite notice to the attorney general. *See Kurtz v. City of Waukesha*, 91 Wis. 2d 103, 116–17, 280 N.W.2d 757, 764–65 (1979). We disagree. We read Pocius's brief to contend that the applicable statutes were not followed and therefore his constitutional rights were violated. Under our reading, Pocius was not required to provide notice to the attorney general.

¶ 29.   The Supreme Court ruled that "[s]ince a mortgagee clearly has a legally protected property interest, he [or she] is entitled to notice reasonably calculated to apprise him [or her] of a pending tax sale." *Id.* at 798. The Court held that "[n]otice by mail or other means as certain to ensure actual notice is a minimum constitutional precondition to a proceeding which will adversely affect the liberty or property interests of *any* party . . . if its name and address are reasonably ascertainable." *Id.* at 800.

¶ 30.   Pocius reasons that his correct address was "reasonably ascertainable" because his correct post office box address was listed on the original deed. He further believes that the County could have easily obtained his address by contacting the county authorities in Lake County, Illinois, where he then resided. Pocius claims this is evidenced by the fact that the Village was able to locate him in order to provide notice of the August 19, 1997 postdeprivation meeting.

¶ 31.   We do not see this as a *Mennonite* case. The *Mennonite* mortgagee was not obligated to provide any address information to the taxing authority. Nor did the mortgagee gratuitously provide such information. Thus, the mortgagee's constitutionally protected interest in the property was at peril because Indiana law did not provide meaningful notice of the tax sale proceedings. Under those circumstances, the Supreme Court deemed that it was constitutionally necessary for the taxing authority to provide adequate notice to the mortgagee.

¶ 32.   This case is wholly different. Pocius was obligated to provide his correct address for property tax purposes via the transfer tax return. He failed to do so. As we have already held, the Village was entitled to rely on that information until Pocius provided new

information reasonably calculated to inform of his new address. Unlike *Mennonite,* the operative Wisconsin statutes spell out a clearly defined process by which the taxing authority provides notice to a delinquent taxpayer whose title is at risk. And as we have also noted, the County and Village followed those procedures.[5] Therefore, the Wisconsin statutory scheme provided Pocius the very kind of constitutional protection mandated by *Mennonite.*

¶ 33. The second of Pocius's procedural due process arguments is based upon a claim that statutory notice procedures required under § 75.12, STATS., were not followed. Specifically, Pocius complains that the County did not provide the affidavit of nonoccupancy required by § 75.12(4). However, Pocius's written motion for summary judgment, the briefs he supplied in support of his motion and in opposition to the Village's and the County's motions, and his summary judgment evidence never raised or alluded to this claimed defect. Had Pocius raised this issue, the County would have had the opportunity to respond.[6]

---

[5] Furthermore, *Mennonite Board of Missions v. Adams,* 462 U.S. 791 (1983), does not stand for the proposition that the taxing authority carries the entire obligation of discovering and maintaining current addresses of property owners from the owners to municipalities or their officers. The *Mennonite* Court pointed out that it "[did] not suggest . . . that a governmental body is required to undertake extraordinary efforts to discover the identity and whereabouts of a mortgagee whose identity is not in the public record." *Id.* at 798 n.4.

[6] We note that this issue did briefly arise in the course of the arguments on the summary judgment motions. However, both the Village and County properly objected that this was new material that Pocius had not raised in his summary judgment motion, briefs or evidence.

610

¶ 34.  In summary, the County followed the statutory process governing a tax sale and the issuance of a tax deed. The process began on August 25, 1993, with Jacobson issuing a tax certificate pursuant to § 74.57(1), STATS., for Pocius's failure to pay property taxes for 1992. In accordance with § 74.59(1), STATS., Jacobson sent a letter on October 4, 1993, to "each owner of record, *as shown in the tax roll*" (including Pocius) advising that there were outstanding taxes due, that a tax certificate had been issued and that title would be transferred to the County two years after issuance of the tax certificate. (Emphasis added.) Later, in the fall of 1994, Pocius was mailed another letter, this one not required by statute, advising him that he must redeem the property by December 31, 1994, to avoid publication.

¶ 35.  On January 19, 1996, Pocius was mailed another invoice for back taxes, as well as a Notice of Application for Tax Deed pursuant to § 75.12, STATS. The manner of service followed the requirements of § 75.12(3). On that same date, the County sent Pocius further notice by certified mail to the address provided by him on the transfer tax return. This was followed by publication of the application in the local newspaper three times between February 16 and March 1, 1996. Finally, on July 30, 1996, the county clerk recorded a tax deed in favor of the County. Later, Jacobson issued an affidavit of attempted service describing her efforts to provide Pocius notice of the tax deed proceedings.

¶ 36.  The County complied with all of the statutory provisions contained in the statutes before transferring the property by tax deed. Pocius makes no claim that the statutory provisions do not comport with due process requirements. The reason the statutory

mailings and notices did not reach Pocius was due to his own errors and omissions, not because of any conduct on the part of the County or Village. As such, Pocius was accorded sufficient procedural due process.

### 3.   *42 U.S.C. § 1983 Relief*

¶ 37.   In addition to his request that the trial court declare the tax deed void, Pocius also maintained that he should be allowed to pursue § 1983 damages for the alleged "taking [of] his property without providing [him] constitutionally valid notice or following proscribed procedures." First, Pocius contends that the County and the Village failed to provide procedural safeguards and that such failure was pursuant to a policy or custom. Second, he contends that the County and the Village's actions were "grossly negligent, indifferent, or committed in reckless disregard of plaintiff's due process rights" because "*no* effort[s]" were made to locate his correct address. The trial court held that Pocius's § 1983 claim failed as a matter of law.

¶ 38.   We see Pocius's § 1983 claims as essentially resurrecting the issues we have already addressed. To that extent, we rely on our previous discussion. However, we also add the following commentary.

¶ 39.   Without recounting the lengthy history and purpose behind § 1983, we observe that this legislation exists to "interpose the federal courts between the States and the people, as guardians of the people's federal rights—to protect the people from unconstitutional action under color of state law." *Patsy v. Board of Regents of Fla.*, 457 U.S. 496, 503 (1982) (quoted source omitted). The key language, "under color of state law," has been defined as "[m]isuse of power, possessed by virtue of state law and made possi-

ble only because the wrongdoer is clothed with the authority of state law." *Enright v. Board of Sch. Dirs. of Milwaukee*, 118 Wis. 2d 236, 243–44, 346 N.W.2d 771, 775 (1984) (quoting *Monroe v. Pape*, 365 U.S. 167, 184 (1961), *overruled on other grounds by Monell v. Department of Soc. Servs. of New York City*, 436 U.S. 658 (1978)). It is also well established that in order to establish § 1983 liability on a municipality, a plaintiff must "identify a municipal 'policy' or 'custom' that caused the plaintiff's injury." *Selerski v. Village of West Milwaukee*, 212 Wis. 2d 10, 17, 568 N.W.2d 9, 12 (Ct. App. 1997) (quoted source omitted).

■

¶ 40. While Pocius's complaint contended that such a policy or custom existed, his summary judgment evidence fails to support this allegation. At his deposition, Pocius was specifically asked to identify such policy, custom or practice. He cited to one other example, but he could not provide any specifics other than the name of a lawyer who was involved. When asked if the situation was identical to his, Pocius replied that it "[s]ounded similar." This evidence can hardly be viewed as sufficient to raise a genuine issue of fact that the County or Village had a policy, custom or practice as envisioned by § 1983. Indeed, it is questionable whether this speculative and murky kind of evidence would even have been admissible at a trial. *See* § 802.08(3), Stats.[7]

---

[7] Although we affirm the dismissal of Pocius's 42 U.S.C. § 1983 (1994) claims because of inadequacies in the proof advanced, other grounds exist to support the dismissal. First, Pocius was afforded a postdeprivation hearing by the Village, giving him the opportunity to be heard on why he felt the property should be returned to him. Second, he had an adequate

¶ 41. We affirm the trial court's dismissal of Pocius's § 1983 claim.[8]

## CONCLUSION

¶ 42. We conclude that the Village and County complied with the applicable statutes governing the preparation and maintenance of the tax roll and the procedures governing a tax foreclosure sale. We hold that these statutes afforded Pocius due process of law. Therefore, Pocius was not entitled to a declaration that the tax deed was void or to an award of damages. We affirm the trial court's denial of Pocius's motion for summary judgment and the court's grant of summary judgment to the Village, the County and their officers.

---

state law remedy available to him by way of inverse condemnation.

Pocius failed on both fronts for the same reason—he could not establish any violation of the statutes or other actionable conduct on the part of the Village or County. In the case of the postdeprivation hearing, we note that due process "guarantees the right to a hearing, not to a certain result." *Jones v. Dane County*, 195 Wis. 2d 892, 918, 537 N.W.2d 74, 82 (Ct. App. 1995). In the case of the inverse condemnation claim, Pocius would first have to establish that he owned the property. Since the property was properly transferred by the tax deed, Pocius cannot establish the predicate title to the property. *See* § 32.10, STATS.

[8] Pocius also requests that this court allow him to amend his § 1983 claim to allege some unspecified further due process claim. He concedes, however, that we should grant this relief only if we reverse the trial court's grant of summary judgment. Because we have affirmed the court's grant of summary judgment, we reject Pocius's request for leave to amend his complaint.

*By the Court.*—Judgments affirmed.