Anthony E. LECIEJEWSKI and Susan M. Leciejewski, his wife, Plaintiffs-Appellants and Cross-Petitioners,

v.

Frank C. SEDLAK and Vi Sedlak, his wife, Defendants-Respondents-Petitioners.

Supreme Court

*No. 82–338. Argued November 29, 1983.— Decided January 31, 1984.*

(Also reported in 342 N.W.2d 734.)

For the defendants-respondents-petitioners there were briefs by *Jack A. Carlson* and *Spears & Carlson,* Washburn, and oral argument by *Jack A. Carlson.*

For the plaintiffs-appellants and cross-petitioners there were briefs by *Michael F. Fauerbach* and *Jacobs, McDonald & Silc, P.C.,* Ashland, and oral argument by *Mr. Fauerbach.*

WILLIAM A. BABLITCH, J.   Frank and Vi Sedlak (defendants) petition for review of a published decision of the court of appeals,[1] which granted title to a parcel of real property to Anthony and Susan Leciejewski (plaintiffs). The Sedlaks claim title to the property by

---

[1] *Leciejewski v. Sedlak,* 110 Wis. 2d 337, 329 N.W.2d 233 (Ct. App. 1982).

adverse possession; the Leciejewskis claim title to the property pursuant to a conveyance from Bayfield county. The county previously had acquired title to the property pursuant to a judgment foreclosing a tax lien on the property. The Leciejewskis filed a cross-petition, seeking review of the court of appeals' determination that the trial court did not abuse its discretion in denying their motion to amend their complaint.

The issues presented for review are:

(1) Did the trial court properly determine that the Sedlaks satisfied the requirements for ownership of the disputed property by adverse possession under sec. 893.25, Stats.?

(2) If so, were the rights that the Sedlaks acquired in the property by adverse possession extinguished by the judgment rendered pursuant to an in rem tax lien foreclosure brought by the county?

(3) Did the trial court abuse its discretion in denying the Leciejewskis' motion to amend their complaint?

We hold that although the trial court properly determined that the Sedlaks satisfied the criteria for ownership by adverse possession under sec. 893.25, Stats., the judgment foreclosing the tax lien extinguished any claim of ownership by the Sedlaks to the disputed property. We also hold that because the Sedlaks would have been prejudiced by an amendment to the Leciejewskis' complaint, the trial court did not abuse its discretion in denying the motion to amend. We affirm the decision of the court of appeals.

## Background

In 1946, Timothy and Olga Faley purchased property from Ruth Mary Gore. The property is located on Lake Namekagon in Bayfield County, Wisconsin. This transaction was recorded in the county register of deeds' office. In 1952, the Faleys conveyed a portion of that prop-

erty by warranty deed to Frank Sedlak. In 1954, the Faleys executed another warranty deed to Sedlak, which contained a different description of the conveyed property than the description in the 1952 deed. In 1956, Rollie and Ruth Mary Gore executed a quitclaim deed to Sedlak, which contained the same property description as that contained in the 1954 deed that the Faleys had executed to Sedlak. All the deeds were recorded in the county register of deeds' office. None of the three deeds to Sedlak contained a description of the disputed property.

In 1960, Olga Faley conveyed by quitclaim deed to her daughter, Bonnie Lee Dyer, the property the Faleys had purchased in 1946, less parcels previously conveyed to Sedlak. Dyer later conveyed by quitclaim deed a portion of this property to Bayfield county for highway purposes.

Delinquencies subsequently arose with respect to real estate taxes assessed to Dyer. Bayfield county commenced proceedings under an ordinance adopted pursuant to sec. 75.521, Stats., to foreclose its tax lien on the Dyer property. The county mailed a copy of the foreclosure petition[2] and pertinent part of the list of tax liens to Dyer, the record owner, to her last known address, pursuant to sec. 75.521(3)(c).[3] Notice of the tax lien

---

[2] Under sec. 75.521(3)(a)4., Stats., a list of tax liens on real property contains a petition to the court for judgment vesting title of each parcel of land in the county, and barring all claims of the former owner or persons claiming through him.

[3] Section 75.521(3)(c), Stats., provides in pertinent part:

"(c) A copy of the petition and so much of the list of tax liens as shall include the description of a particular parcel shall be mailed by registered or certified mail, return receipt requested, by the county treasurer to the last-known post-office address of each owner and mortgagee of record, the state of Wisconsin in the instances specified in sub. (3)(a)2, and to

proceedings on the Dyer property was also published in two Bayfield county newspapers, in accordance with sec. 75.521(6).[4] Frank Sedlak apparently also had notice of the foreclosure, as he testified that prior to the foreclosure, he alerted Dyer that foreclosure proceedings were about to be commenced. On April 26, 1976, judgment was entered granting to Bayfield county title to the Dyer property. In the judgment, the property was described according to the description contained in the 1946 deed from Gore to the Faleys, less the parcel conveyed to Sedlak in 1952 and the parcel Dyer conveyed to Bayfield county.

On July 25, 1978, Bayfield county conveyed by quit claim deed to the Leciejewskis the property it had acquired in the tax lien foreclosure. The property was described according to the description contained in the foreclosure judgment. Shortly after he purchased the property, Anthony Leciejewski inspected the land and discovered a storage shed on that portion of the property near the southern part of a channel that extended into Lake Namekagon. A cabin was located on the southwest corner of the property and a boathouse was located by the channel. In March, 1979, Leciejewski had a survey done on the property, and learned that the cabin, boathouse and shed were located on property that was included in the legal description of the property the Lecie-

each municipality, other than the municipal taxing district foreclosing, having any right, title or interest in the land or in the tax liens or the proceeds thereof. . . ."

[4] Section 75.521(6), Stats., states in relevant part:

"(6) PUBLIC NOTICE OF IN REM PROCEEDING. Upon the filing of such list in the office of the clerk of the circuit court, the county treasurer forthwith shall prepare a notice that such list of tax liens and petition has been so filed and a copy thereof posted in the office of said county treasurer. The treasurer shall cause such notice, together with the list of tax liens and petition, to be published as a class 3 notice, under ch. 985. . . ."

jewskis had purchased from Bayfield county. It was later discovered that the Sedlaks had constructed those buildings. Although the Sedlaks claimed ownership of that portion of the property containing those buildings, none of that portion of the property was described in the deeds describing the conveyances to Sedlak in 1952, 1954, and 1956.

On December 24, 1979, the Leciejewskis filed a complaint against the Sedlaks and requested that the Sedlaks be barred from claiming any right, title, or interests in the property, and also that they remove the buildings from the property. In their answer, the Sedlaks claimed that they took title to that part of the property in dispute by written conveyance recorded December 12, 1952. The Sedlaks also claimed ownership of the property by adverse possession.

A trial to the court was held in August, 1981. At the close of the evidence, the Leciejewskis asked the trial court for leave to amend their complaint to request that they be granted ownership of the buildings that the Sedlaks had erected on the property. The court denied the motion.

The court subsequently held that the evidence presented at trial failed to support the Sedlaks' claim of title to the disputed property based on written conveyance or on adverse possession under color of title. The court also held, however, that the Sedlaks had cultivated, used and improved the disputed parcel for more than twenty years prior to the commencement of the action, which was December 24, 1979. In a judgment entered on January 29, 1982, the court stated that the Sedlaks have title to the disputed property by adverse possession pursuant to sec. 893.25, Stats.,[5] since at least the summer of

[5] Section 893.25, Stats., provides:

"Adverse possession, not founded on written instrument. (1) An action for the recovery or the possession of real estate and a

1955, and that the Leciejewskis and all persons claiming under them were barred from claiming title to that property.

The Leciejewskis appealed to the court of appeals. The court of appeals affirmed the trial court's determination that the Sedlaks had satisfied the criteria for ownership by adverse possession pursuant to sec. 893.25, Stats. The court also held that the trial court did not abuse its discretion in denying the Leciejewskis' motion to amend their complaint. However, the court held that the judgment foreclosing the tax lien barred the Sedlaks' claim of ownership to the property.

The Sedlaks filed a petition for review, and the Leciejewskis filed a cross-petition for review with this court. We granted both petitions.

*Adverse Possession*

The Leciejewskis argue that we need not reach the issue of the effect of the foreclosure judgment on the Sedlaks' claim of ownership of the disputed property because the Sedlaks did not adversely possess the property pursuant to sec. 893.25, Stats. They contend that the Sedlaks used the disputed property with the Faleys' and Dyer's permission, and that a permissive use cannot be

---

defense or counterclaim based on title to real estate are barred by uninterrupted adverse possession of 20 years, except as provided by s. 893.14 and 893.29. A person who, in connection with his or her predecessors in interest, is in uninterrupted adverse possession of real estate for 20 years, except as provided by s. 893.29, may commence an action to establish title under ch. 841.

"(2) Real estate is possessed adversely under this section:

"(a) Only if the person possessing it, in connection with his or her predecessors in interest, is in actual continued occupation under claim of title, exclusive of any other right; and

"(b) Only to the extent that it is actually occupied and:

"1. Protected by a substantial enclosure; or

"2. Usually cultivated or improved."

adverse. The Leciejewskis also assert that even if the Sedlaks' use of the property was not permissive, they did not demonstrate that they had adversely possessed the property for a twenty year period prior to the 1976 foreclosure judgment.

Under sec. 893.25, Stats., an action for the recovery of real estate is barred by uninterrupted adverse possession for twenty years. Adverse possession requires enclosure, cultivation, or improvement of the land. Section 893.25 (2). The physical possession of the property must be hostile, open and notorious, exclusive and continuous for the statutory period. *Allie v. Russo,* 88 Wis. 2d 334, 343, 276 N.W.2d 730 (1979).

We note at the outset that in its memorandum opinion, the trial court concluded that the Sedlaks had satisfied the criteria for ownership by adverse possession under sec. 893.25, Stats., prior to the commencement of the action. In the judgment, the court concluded that the Sedlaks had adversely possessed the disputed property since at least the summer of 1955. In addition, several of the Sedlaks' activities on the property that the court cited in its opinion as supporting their claim of ownership occurred in 1952–1956. It therefore appears that the trial court concluded that the requisite twenty year period under sec. 893.25 began in 1955. Because the twenty year period would then have been met in 1975, and because the foreclosure judgment was not rendered until 1976, if the Sedlaks had satisfied the criteria of sec. 893.25 as of 1975, they would have acquired title to the property by adverse possession prior to the foreclosure judgment.

We conclude that the trial court properly determined that the Sedlaks had adversely possessed the disputed property for twenty years pursuant to sec. 893.25, Stats., since at least the summer of 1955. Testimony at trial

indicates that Frank Sedlak built a shed on the disputed property in 1953, and a horse barn on the property in 1953 or 1954. Frank Sedlak converted the barn to a cabin between 1968 and 1970. In 1955, Sedlak constructed a fence and boathouse on the disputed property. There is no indication from the record that the Sedlaks received permission from the Faleys or Dyer to build the fence, boathouse and horse barn. Frank Sedlak testified that he planted trees in 1956, 1957, and 1958, and he also cleared trees and weeds on the property. Again, there is nothing in the record to indicate that Sedlak requested or received permission from the Faleys or Dyer to engage in these activities. This testimony indicated that the Sedlaks continuously improved and cultivated the disputed property from at least 1955 to the time the foreclosure judgment was rendered in 1976. In addition, the Sedlaks' activities were hostile, open, notorious, and continuous for the requisite twenty year period. Although there was conflicting testimony concerning the dates on which some of the Sedlaks' activities occurred, the credibility of witnesses and the weight to be given their testimony are matters for the trial court. *Estate of Jones*, 74 Wis. 2d 607, 612, 247 N.W.2d 168 (1976). The Sedlaks therefore met the requisite twenty year period under sec. 893.25 prior to the 1976 foreclosure judgment.

*Effect Of Tax Lien Foreclosure*

The Sedlaks contend that they acquired ownership of the disputed property by adverse possession under sec. 893.25, Stats., prior to the 1976 tax lien foreclosure, and that their interest in the property was not barred by the foreclosure judgment. Under sec. 893.25(1), an action for the recovery or possession of real estate and a defense or counterclaim based on title are barred by uninterrupted adverse possession of twenty years, with specified exceptions. The Sedlaks argue that this applies

even if the title the opposing party is relying on is a deed obtained pursuant to a tax lien foreclosure. They therefore assert that their claim of title to the disputed property supercedes the Leciejewskis' claim.

We have not previously addressed the effect of a judgment foreclosing a tax lien pursuant to sec. 75.521, Stats., on a claim of property ownership arising under sec. 893.25. A resolution of this issue requires an interpretation of sec. 75.521 and a consideration of its relationship to sec. 893.25.

A foreclosure proceeding under sec. 75.521, Stats., is an in rem action against the land itself. *See Devitt v. City of Milwaukee,* 261 Wis. 276, 52 N.W.2d 872 (1952). Section 75.521 sets forth the procedures that a county must follow to enforce its tax lien against a parcel of real property. A judgment of foreclosure rendered pursuant to either sec. 75.521(8), which governs default judgments, or sec. 75.521(13), which applies to judgments rendered after a party has answered and asserted an interest in the property, has the effect of the issuance of a tax deed to the county. Section 75.521(8) also states, in part:

"In the event of the failure to redeem or answer by any person having the right to redeem or answer . . . such person and all persons claiming under and through him . . . shall be forever barred and foreclosed of all his right, title and interest and equity of redemption in and to the parcel described in such list of the tax liens, and upon filing an affidavit of such default or failure of redemption by the county treasurer of such county, the court . . . shall render final judgment ordering and adjudging that the county is vested with an estate in fee simple absolute in such lands . . . and all persons . . . who may have had *any right, title, interest, claim, lien or equity of redemption in such lands,* are forever barred and foreclosed of such right, title, interest, claim, lien or equity of redemption . . . such judgment shall have the effect . . . of judgment to bar former owners and *quiet title thereon.*" (Emphasis added.)

Similar language is contained in sec. 75.521 (13) (b). Under sec. 75.521 (5), every person having any right, title or interest in or lien upon the property may redeem the property. Similarly, sec. 75.521 (7) (a) provides that every person having any right, title or interest in or lien upon the property may serve an answer on the county treasurer, setting forth the nature and amount of his or her interest in the property.

The above provisions indicate that the clear intent of sec. 75.521, Stats., is to foreclose all rights, titles, interests, liens, and claims in the property that is subject to the foreclosure, including a claim asserted under sec. 893.25. The provisions in sec. 75.521 also reflect an intent to ensure that once a valid foreclosure judgment is rendered, the judgment vests in the county an estate in the property in fee simple absolute, which the county may then pass on. Further, a tax deed is not derivative, but creates a new title that extinguishes all former titles and liens not expressly exempted from its operation. *Foreclosure of Tax Liens v. Young*, 106 Wis. 2d 244, 251, 316 N.W.2d 362, citing *Jensen Livestock Co. v. Custer Co.*, 124 P.2d 1013, 1018 (Mont. 1942). Although secs. 75.521 (8) and (13) (b) provide that this fee simple interest is subject to the latest dated tax lien and to recorded restrictions under sec. 75.14, there is no specified exemption in sec. 75.521 for interests or claims based on adverse possession.

We have previously held that the language in sec. 75.521 (8), Stats., concerning the fee simple interest that the county acquires and the various rights, titles, and interests in the property that are cut off by a foreclosure judgment, ". . . is inconsistent with the idea that such a foreclosure may grant the county good title as to one person, but not as to another." *Young*, 106

Wis. 2d at 252. We therefore conclude that the effect of the 1976 foreclosure judgment was to extinguish all rights, titles, and interests in the property subject to the foreclosure, including the Sedlaks' claim based on adverse possession under sec. 893.25. The interest in the disputed property that the Leciejewskis acquired from the county is a fee simple interest, and their title defeats the Sedlaks' claim of ownership based on adverse possession.

We note that our conclusion is consistent with decisions other jurisdictions have reached in considering the effect of an in rem tax lien foreclosure on a claim of title to property based on adverse possession. In *Label v. Cleasby*, 537 P.2d 859 (Wash. Ct. App. 1975), the court held that the tax foreclosure was a proceeding in rem, and vested in the purchaser of a tax deed, or in his assignee, a new title superior to any prior possessory rights, no matter how exclusive or adverse. Similarly, in *Whiteman v. Mattson*, 446 P.2d 904 (Colo. 1968), the court held that issuance of a valid tax deed creates a virgin title in the property and erases all former interests in the land, including those arising from adverse possession.

The Sedlaks also contend that they should have received the type of notice of the tax lien foreclosure set forth in sec. 75.521(3)(c), Stats. That provision requires that a copy of the foreclosure petition and the part of the list of tax liens containing the relevant property description be mailed by registered or certified mail to the last-known address of each owner and mortgagee of record. If the county was required to mail notice to the Sedlaks pursuant to sec. 75.521(3)(c), its failure to comply with the statute would render the foreclosure judgment void. *See Young*, 106 Wis. 2d at 250.

Under sec. 75.521(3)(c), Stats., the county was only required to mail notice and the relevant portion of the

list of tax liens to the last-known address of each owner and mortgagee of record. The other notice provision in sec. 75.521 is sec. 75.521(6), which governs public notice of the in rem proceeding. Under that section, after the list of tax liens is filed in the clerk's office in the circuit court, the county treasurer must prepare a notice that the list of tax liens and foreclosure petition have been filed. The treasurer must then see that the notice, list of tax liens, and the petition are published as a class 3 notice under ch. 985. Section 75.521(6) also specifies the form that the published notice should take.

It is undisputed in this case that the county mailed notice to Dyer, the record owner, to her last-known address, pursuant to sec. 75.521(3)(c), Stats. It is also undisputed that the county complied with the public notice requirements of sec. 75.521(6). In addition, it appears that Frank Sedlak had actual notice of the fore-closure, as he testified that prior to the foreclosure, he alerted Dyer that foreclosure proceedings were going to occur. Finally, it is uncontroverted that the Sedlaks' in-terest in the property based on adverse possession was not recorded. Because the Sedlaks could not be consid-ered record owners, the county was not required to mail them notice of the foreclosure pursuant to sec. 75.521(3) (c). Under these circumstances, the public notice af-forded under sec. 75.521(6) was the only notice that the county was required to give persons, such as the Sedlaks, claiming an interest in the property that was not of rec-ord. To require a county to provide notice by mail to one claiming ownership by adverse possession would impose an unreasonable burden on the county to inspect the prop-erty and attempt to identify and locate possible adverse possessors in order to mail notice of the foreclosure to

them. We therefore conclude that in this case, the county fully complied with all notice requirements of sec. 75.521.[6]

*Motion To Amend Complaint*

The Leciejewskis contend that the trial court erred in denying their request to amend their complaint to delete their prior request that the Sedlaks remove the buildings they had erected on the property, and to substitute a request that the Leciejewskis be declared the owners of those buildings. When the Leciejewskis made this motion at the close of the evidence, the Sedlaks' attorney stated that had the Leciejewskis requested in their complaint that they be declared the owners of the buildings, the Sedlaks would have counterclaimed for reimbursement for the value of those buildings. Under sec. 843.09, Stats.,[7] a defendant in an action for a declaration of

---

[6] The dissent states that the majority opinion fails to address the issue of proper and adequate notice to the Sedlaks. That is incorrect. The text accompanying this footnote addresses that issue.

The dissent would place a duty on every county in this state that wants to sell land pursuant to a tax foreclosure to inspect or have inspected every square foot of that land before the sale in order to determine whether a claim of adverse possession might lie. Such a duty is unworkable and would result in few if any tax foreclosure sales because of the burdens involved. That clearly is one of the reasons that sec. 75.521, Stats., provides for notice by publication. That is also why it is reasonable to place the burden on one claiming an interest by adverse possession to declare that interest under ch. 841 or to follow published notices of tax lien foreclosures. The alternative urged by the dissent is to create a monster machine of bureaucratic red tape that is almost guaranteed not to work.

[7] Section 843.09, Stats., provides in part:

"**Counterclaim for improvements.** In any action brought for a declaration of right to possession or to recover possession of real property or to remove claimed encroachments, a defendant in addition to defending against plaintiff's claim may by counterclaim allege that he or a person under whom he claims, while

right to possession or to recover possession of real property who alleges to hold title to the property adversely by color of title asserted in good faith may counterclaim for the value of improvements the defendant made to that property. In their answer to the Leciejewskis' complaint, the Sedlaks claimed title to the disputed property both by a written conveyance and by adverse possession.

It is within the trial court's discretion to allow amendments of the pleadings until and even after judgment. *Soczka v. Rechner,* 73 Wis. 2d 157, 162, 242 N.W.2d 910 (1976). We will not reverse the trial court's determination on a motion to amend unless there has been a manifest abuse of discretion. *Stanhope v. Brown County,* 90 Wis. 2d 823, 834, 280 N.W.2d 711 (1979). We have also held, however, that an amendment to the pleadings may not unfairly deprive the adverse party of the opportunity to contest the issues raised by the amendment. *Soczka,* 73 Wis. 2d at 162.

We conclude that the Sedlaks would have been prejudiced had the amendment to the Leciejewskis' complaint been allowed. The trial court therefore properly exercised its discretion in denying the motion to amend. At the time the Leciejewskis made their motion, the parties had completed their introduction of the evidence. In their complaint, the Leciejewskis had not requested to be declared the owners of the buildings. The Sedlaks therefore had not counterclaimed for the value of those buildings. Under sec. 843.09, Stats., the Sedlaks presumably could have filed a counterclaim because they alleged in their answer that they held title to the property on which the buildings were erected adversely by color of title. Be-

---

holding adversely by color of title asserted in good faith, has made permanent and valuable improvements on or by permanent and valuable building has encroached on such property and may demand the value to the plaintiff of such improvements and taxes paid. . . ."

cause the value of the buildings was not at issue, the Sedlaks had presented no evidence during trial concerning value. The Sedlaks therefore had no opportunity to contest the issue that would have been raised by the requested amendment to the complaint.

*By the Court.*—The decision of the court of appeals is affirmed.

SHIRLEY S. ABRAHAMSON, J. (dissenting). Title to property acquired by adverse possession matures into an absolute fee interest after the statutory prescriptive period has expired. Thus prior to the tax sale, the Sedlaks, not Dyer, owned the portion of the property containing the buildings.

The real issue in this case, which the majority fails to address, is the adequacy of the notice of the tax sale. Dyer, the "record owner," was given notice. The Sedlaks, the actual owners, were not given notice.

Characterizing the proceeding as in rem is not determinative of the constitutional sufficiency of the notice given. The ultimate test of the adequacy of notice is a balancing test. Against the government's interest in collecting taxes, we must balance the individual's property right which is protected by the federal and state constitutions. Even where publication notice is generally sufficient, it is inadequate in a particular case in which the identity of the owner could have been ascertained by diligent inquiry.

In the circumstances of this case (*e.g.*, confusing property descriptions in the deeds and tax sale for assessment on unimproved land, not on the improvements in issue in this case), I conclude that the notice did not measure up to the quality of notice which due process requires. I conclude that the county was obliged to make a good faith effort to look at the property and give notice to the Sedlaks, whose interest would have appeared on physical examination of the property. Because

I conclude that the Sedlaks' property has been taken without due process, I dissent.