# COURT OF APPEALS
## DECISION
## DATED AND FILED

## November 20, 2025

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2024AP930**

Cir. Ct. No. 2019CV93

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT IV

---

WILLIAM CARLSON AND ESTATE OF ANN B. CARLSON,

PLAINTIFFS-RESPONDENTS,

V.

DOUGLAS THOME,

DEFENDANT-APPELLANT.

---

APPEAL from a judgment of the circuit court for Marquette County: MARK T. SLATE, Judge. *Affirmed in part, reversed and vacated in part, and cause remanded for further proceedings.*

Before Kloppenburg, Nashold, and Taylor, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Douglas Thome appeals a trespass judgment determining that a house on Thome's property encroaches on property owned by William Carlson and the Estate of Ann B. Carlson ("William").[1] Specifically, Thome argues that the circuit court erred in denying his motions for partial summary judgment on William's trespass and declaratory judgment claims and in granting William's summary judgment motion on the declaratory judgment claims.[2] Thome asserts, in pertinent part, that his quit claim deed gives him the exclusive title over the property in dispute. Thome also appeals an order denying his motion for sanctions against William and a separate order granting William's motion for sanctions against Thome. We reverse the court's partial summary judgment orders, vacate the judgment of trespass against Thome and the dismissal of his pertinent counterclaims, and remand for further proceedings consistent with this opinion. We affirm the sanctions orders.

## BACKGROUND

¶2 The following material facts are derived from the parties' summary judgment materials.[3]

---

[1] For clarity and ease of reference, we refer to the respondents individually and collectively as "William" because several individuals referenced in this opinion share the Carlson surname.

[2] We construe Thome's appeal as challenging the circuit court's denial of Thome's motion for partial summary judgment on William's trespass claim asserted in the original complaint and the circuit court's denial of Thome's partial summary judgment motion on the trespass and declaratory judgment claims asserted in the amended complaint. We also construe Thome's appeal as challenging the court's grant of partial summary judgment on William's declaratory judgment claims in William's favor.

[3] In his appellate reply brief, Thome disputes as "hearsay" the historical facts alleged in William's amended complaint and asserted in the summary judgment materials referred to in William's appellate response brief. However, Thome conceded in his numerous summary judgment materials before the circuit court that there were no material factual disputes for
(continued)

¶3      William owns property located on the shore of Mason Lake in the Town of Briggsville (the "Carlson property"). The Carlson property is adjacent to and directly north of property owned by Thome (the "Thome property"). We refer to the boundary line between the Carlson property to the north and the Thome property to the south as the north-south lot line.

¶4      In 1995, the dam creating Mason Lake burst, causing damage to some of the properties surrounding the lake. Harold and Ann Carlson ("the Carlsons"), the parents of William and the predecessors in interest to the Carlson property, brought a declaratory judgment action in the Marquette County Circuit Court against the owners of several adjacent properties, including Juanita Kennedy who owned the Thome property, to determine property boundaries that had been disturbed by the burst dam (the "1995 action").[4] The deed to the Carlson property described the south lot line of the property as a line starting at a "gas pipe stake" located 36 feet north of "Lot 4." The deed to the Thome property described the north lot line of the property as the northern edge of a 35-foot-wide strip of land to

---

purposes of summary judgment. Thome also does not include any record cites in his appellate briefing indicating that he raised a hearsay objection to any of the material facts set forth in William's summary judgment materials before the circuit court. We decline to consider Thome's hearsay argument because "[a] party will not be heard to maintain a position on appeal inconsistent with that taken in the [circuit] court." *See Siegel v. Leer, Inc.*, 156 Wis. 2d 621, 628, 457 N.W.2d 533 (Ct. App. 1990). We also generally decline to consider arguments raised for the first time on appeal and see no persuasive exception to that rule here. *See State v. Dowdy*, 2012 WI 12, ¶5, 338 Wis. 2d 565, 808 N.W.2d 691 ("As a general rule, issues not raised in the circuit court will not be considered for the first time on appeal.").

[4] *See Carlson v. Harry*, Marquette County Case No. 1995CV42.

the north of Lot 4.  There is no dispute that the parties' operative deeds describe the Carlson and Thome properties with these boundaries.[5]

¶5    During the course of the trial in the 1995 action, the Carlsons and Kennedy reached a stipulation that was entered into the record as follows: (1) the gas pipe stake located behind the garage on the Carlson property and referenced in the Carlsons' deed is the northern edge of Benton Street, an abandoned 66-foot-wide road that ran parallel to and between the south lot line of the Carlson property and the north lot line of the Thome property; and (2) the Carlsons owned the northern one-half portion of Benton Street and Kennedy owned the southern one-half portion of Benton Street.  At trial and as pertinent here, Kennedy argued that she owned the northern portion of Benton Street by adverse possession, among other grounds.

¶6    Following a bench trial, the circuit court issued its Findings of Fact, Conclusions of Law and Judgment, *nunc pro tunc*, that the northern 33 feet of Benton Street belonged to the Carlsons, and that the southern 33 feet of Benton Street belonged to Kennedy (the "1996 Judgment").  Based on these findings, the court declared that: the legal descriptions in the parties' deeds did not reflect the true north-south lot line between the Carlson and Thome properties; the true north-south lot line between the properties is 33 feet south of the gas pipe stake located

---

[5] In full, William's warranty deed describes the south lot line of the Carlson property as: "Beginning at a gas pipe stake 36' N of the NE corner of platted Lot 4, Block A of Briggs Plat; thence S 86 degrees 0' W88.8 ft to an iron stake."  In full, Thome's quit claim deed describes the north lot line of the Thome property as: "Lot Five (5), and a strip of land Thirty-five (35) feet in width through-out, from the North side of Lot Four (4) in Block A in the Village of Briggsville. Also the following described piece of land lying East of and adjacent to said Lot Five (5) which piece of land is bounded on the East and North by the East line of said Lot Four (4) extended North to intersect with the North line of said Lot Five (5) extended East," exempting a parcel previously conveyed and corrected by deed which is not at issue here.  (Emphasis omitted.)

immediately to the southeast of the garage on the Carlson property and as referenced in the Carlsons' deed (the "disputed property");[6] and Kennedy failed to prove any ownership interest north of this lot line by adverse possession or otherwise. The court also executed a written two-page Abridgment of Judgment (the "1996 Abridgment" or sometimes, "the Abridgment") that excerpted portions of the court's full written 1996 Judgment. The 1996 Abridgment was recorded with the Marquette County Register of Deeds and later authenticated by the circuit court. In 2005, a Wisconsin licensed land surveyor prepared and certified a survey map that was filed with the Marquette County Register of Deeds and that depicted the lot lines of the Carlson and Thome properties as determined in the 1996 Judgment and Abridgment. The property descriptions in the deeds for the Carlson and Thome properties were never amended to conform with the 1996 Judgment.

¶7     In April 2013, Marquette County ("the County") issued a "tax deed" and acquired the Thome property from Kennedy for failure to pay property taxes. The tax deed used the same legal description of the Thome property as Kennedy's deed. In November 2013, the County sold the Thome property to Thome and conveyed a quit claim deed that contained the same legal description of the property as the tax deed. Neither the tax deed nor the quit claim deed referenced the 1996 Abridgment but contained parenthetical references that the property was formerly owned by Kennedy. A title search run on the property prior to its conveyance to Thome did not reveal any liens or judgments.

---

[6] In the 1996 Judgment, the circuit court also appears to refer to the "gas pipe stake" referenced in the deed to the Carlson property as a "stake," "iron rod," or "iron pipe." For consistency and ease of reference, we use the term "gas pipe stake."

5

*Procedural Background*

¶8      In November 2019, William filed a complaint against Thome alleging claims of trespass and public and private nuisance.[7]  William alleged that a retaining wall on the Thome property encroached on the Carlson property.

¶9      Both parties moved for partial summary judgment on William's trespass claim.  William argued that he was entitled to summary judgment in his favor because the 1996 Judgment establishes that he is the rightful owner of the disputed property and that this issue was already litigated and decided by the circuit court.  Thome argued that he was entitled to summary judgment in his favor on the trespass claim because, in pertinent part, the tax deed gave the County a new and independent title to the Thome Property, which was transferred to Thome when he purchased the property; and, pursuant to Thome's quit claim deed, the Thome property includes the disputed property.  The circuit court denied both parties' partial summary judgment motions, concluding that there was a genuine issue of disputed material fact regarding the location of the north-south lot line between the properties that precluded awarding partial summary judgment in favor of either party.

¶10      During the pendency of the parties' first round of partial summary judgment motions on William's original complaint, Thome filed a motion for sanctions against William, arguing that William's trespass claim was "without a reasonable basis" because William purportedly knew that the correct location of the north-south lot line does not support his trespass claim.  The circuit court

---

[7] William's nuisance claims were ultimately dismissed with prejudice at trial and are not raised in this appeal.  We do not address them further.

denied Thome's motion for sanctions, which is one of the decisions that Thome challenges on appeal.

¶11 Both parties moved for reconsideration of the circuit court's decisions denying each party's partial summary judgment motion. Before the court ruled on the reconsideration motions, Thome successfully moved for judicial substitution. The new court denied Thome's motion for reconsideration, concluding that: the quit claim deed transferred to Thome by the County could only transfer the interest that the County had actually acquired in the property; there were disputed issues of material fact concerning the manner in which the County acquired the tax deed to property in which the 1996 Judgment declared that the defaulting mortgagee (Kennedy) did not have an interest; and there was lack of notice to William regarding the County's acquisition of property that William owned under the 1996 Abridgment.

¶12 The circuit court held William's reconsideration motion in abeyance and allowed him to amend his complaint to set forth his specific ownership interest in the Carlson property and the chain of title to that property.

¶13 In June 2023, William filed an amended complaint in which he reasserted a trespass claim against Thome, again alleging that Thome's retaining wall encroaches on the Carlson property and adding the allegation that Thome's house also encroaches on the Carlson property. William also added two declaratory judgment claims concerning the location of the north-south lot line between the Carlson and Thome properties and the ownership of the property north of this line. In his answer, Thome asserted as an affirmative defense, in pertinent part, that his house and retaining wall do not encroach on the Carlson property pursuant to the legal description of Thome's property in the tax deed and

in Thome's quit claim deed. Thome filed a third amended counterclaim asserting counterclaims for declaratory relief and for various damages on trespass and an unspecified zoning violation based on Thome's title under his quit claim deed to the disputed property. Thome also filed several motions to dismiss William's individual claims and the amended complaint as a whole.

¶14 In a written decision and order, the circuit court denied all of Thome's motions. The court noted that it had already addressed and rejected several of the arguments raised in Thome's motions, including arguments relating to the effect of the County's tax deed on the ownership of the disputed property and various deficiencies in the 1996 Abridgment, including its failure to: include a legal description of the Thome property; name all of the parties to the 1996 Judgment; and to transfer the disputed property to William. To address its concerns about the age of the case—which at that point, had been pending for almost four years—the court prohibited either party from "re-litigat[ing] issues the Court has already ruled upon, unless the facts of the case, or the law, has changed since the last ruling." The court verbally cautioned each party that it would consider sanctioning a party who violated the order. This prohibition and the possibility of sanctions were included in a written scheduling order.

¶15 Each party filed a second set of motions for partial summary judgment on William's trespass and declaratory judgment claims set forth in his amended complaint and on Thome's counterclaims. William argued, in pertinent part, that he was entitled to partial summary judgment on his claims because the 1996 Judgment conclusively establishes that the north-south lot line between the parties' properties is 33 feet south of the gas pipe stake behind the garage on the Carlson property; the 1996 Judgment conclusively establishes that Thome's predecessor in interest, Kennedy, had no ownership interest in any of the property

north of this lot line; and there is no factual dispute that Thome's retaining wall and house encroach on the Carlson property because they extend beyond this north-south lot line.

¶16    Thome argued that he was entitled to partial summary judgment on the declaratory judgment and trespass claims because, pursuant to the tax deed and his quit claim deed, Thome owns the disputed property by operation of law and the 1996 Abridgment is deficient for the same alleged failures noted above.

¶17    In response to Thome's second set of partial summary judgment filings, William moved for sanctions against Thome on the ground that Thome's filings raised several issues that the parties had previously litigated and the circuit court had already decided, including Thome's arguments related to the tax deed and the purported deficiencies in the 1996 Abridgment.

¶18    The circuit court granted partial summary judgment in favor of William on his declaratory judgment claims.  Specifically, the court declared that the gas pipe stake at the southeast corner of the garage on the Carlson property represents the northern point of the vacated Benton Street, from which the northern portion of Benton Street awarded to the Carlsons in the 1996 Judgment had been determined.  The court adopted and incorporated by reference the 1996 Judgment that declares that the north-south lot line between the properties is 33 feet south of the gas pipe stake.

¶19    On the trespass claim, the circuit court denied each party's partial summary judgment motion.  As to William's partial summary judgment motion on the trespass claim, the court identified as a disputed issue of material fact the location of the gas pipe stake behind the southeast corner of the garage on the Carlson property as referenced in the 1996 Judgment and Abridgment from which

the north-south lot line is determined. As to Thome's partial summary judgment motion on the trespass claim, the court rejected Thome's arguments and dismissed Thome's counterclaims. The court also concluded that Thome was attempting to relitigate issues previously raised and rejected by the court, including Thome's arguments about the tax deed and the 1996 Abridgment. Accordingly, the court granted William's motion for sanctions and ordered Thome to pay all reasonable costs and fees, including attorney fees that William had incurred since the court entered the scheduling order on November 13, 2023.

¶20 Before trial on William's trespass claim, Thome filed several letters with the circuit court and a motion "to clarify" the court's December 2022 denial of Thome's Motion to Reconsider the court's rejection of Thome's first motion for partial summary judgment on William's trespass claim as set forth in the original complaint. Thome reiterated his arguments related to the tax deed and his quit claim deed in addition to raising new arguments for the first time.[8] The court rejected all of Thome's arguments, determining that rather than seeking clarification of the court's prior ruling, Thome was attempting to relitigate the tax deed issue that had already been decided.

¶21 The trespass claim proceeded to a bench trial on the issue of the location of the gas pipe stake behind the garage on the Carlson property as

---

[8] A new argument raised by Thome alleged that William's claims for declaratory judgment and trespass are barred by a three-year statute of limitations, which disallows certain claims against land conveyed by a tax deed "void on its face" after the expiration of three years from the time of the recording of the tax deed. *See* WIS. STAT. § 75.29(1) (no action for trespass "shall be brought as to lands purporting to be conveyed by a tax deed void on its face after the expiration of 3 years from the time of the recording of the deed"). Another new argument raised by Thome alleged that if William challenged the lack of notice of the tax deed, William was required to post a bond pursuant to WIS. STAT. § 75.285.

referenced in the 1996 Judgment and Abridgment. The garage that had existed and was referenced in these judgments had been removed by William years earlier and replaced with a new structure. William presented testimony from a surveyor concerning the location of the gas pipe stake and the location of the north-south lot line, which was to be calculated at 33 feet south of this stake as required by the 1996 Judgment. The surveyor concluded that, based on these determinations, a portion of the north side of Thome's house encroaches on the Carlson property by approximately four feet.

¶22 On cross-examination, the surveyor testified that, in his opinion, the location of the gas pipe stake is in the middle of Benton Street, as opposed to the northern edge of Benton Street as determined in the 1996 Judgment. When questioned by the circuit court, the surveyor testified that he correctly identified the gas pipe stake referenced in the 1996 Judgment but that he disagreed with where the 1996 judgment stated the stake is located in relation to Benton Street. Thome presented no evidence at trial.

¶23 The circuit court found that the surveyor presented credible testimony, adopted the surveyor's conclusions about the location of the gas pipe stake as referenced in the 1996 Judgment, and determined that a portion of the north side of the house on Thome's property encroaches on the Carlson property. Accordingly, the court granted William's trespass claim in his favor and ordered Thome to remove the portion of his house encroaching on William's property within 180 days.[9] Thome appeals.

---

[9] Because William had previously removed the retaining wall that he alleged encroached on his property, the circuit court did not order its removal. On its own motion, the court stayed the judgment of trespass against Thome during the pendency of this appeal.

**DISCUSSION**

¶24 Thome argues that the circuit court erred in three respects: (1) by denying Thome's motions for partial summary judgment on the trespass and declaratory judgment claims and granting summary judgment in favor of William on the declaratory judgment claims;[10] (2) by denying Thome's motion for sanctions against William on the trespass claim; and (3) by imposing sanctions on Thome for relitigating issues that had already been presented to the court and decided. For the following reasons, we reverse the circuit court's orders denying Thome's motion for partial summary judgment on the declaratory judgment and trespass claims and the court's grant of partial summary judgment in favor of William on the declaratory judgment claims. As a result, we vacate the Judgment of Trespass against Thome and the dismissal of Thome's pertinent counterclaims, and we remand for further proceedings consistent with this opinion. We affirm the court's decisions regarding sanctions.

---

[10] We note that Thome's appellate briefing states at various points that he appeals the circuit court's grant of partial summary judgment in favor of William on the trespass claim, the grant of partial summary judgment in favor of William generally, and the denial of Thome's partial summary judgment motions on the "ownership" and trespass claims. As William points out, the court denied partial summary judgment in favor of William on the trespass claim, which proceeded to a court trial. As noted, we construe Thome's appeal as challenging the court's denial of Thome's partial summary judgment motions on the trespass claim as asserted in the original and amended complaints, the court's denial of Thome's partial summary judgment motion on the declaratory judgment claims as asserted in William's amended complaint, and the court's grant of partial summary judgment in favor of William on the declaratory judgment claims asserted in the amended complaint.

## I. Summary Judgment

### A. Standard of Review

¶25    Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Springer v. Nohl Elec. Prods. Corp.*, 2018 WI 48, ¶11, 381 Wis. 2d 438, 912 N.W.2d 1 (quoting WIS. STAT. § 802.08(2) (2013-14)).  "[E]videntiary facts set forth in the affidavits or other proof are taken as true … if not contradicted by opposing affidavits or other proof." *L.L.N. v. Clauder*, 209 Wis. 2d 674, 684, 563 N.W.2d 434 (1997).

¶26    We review the disposition of a motion for summary judgment de novo, and apply the same, well-established methodology the circuit courts apply. *Springer*, 381 Wis. 2d 438, ¶9.  Summary judgment is inappropriate if there is any reasonable doubt concerning the existence of factual disputes, or if reasonable inferences from undisputed facts could lead to conflicting results. *Maynard v. Port Publications, Inc.*, 98 Wis. 2d 555, 563, 297 N.W.2d 500 (1980).

### B. Declaratory Judgment and Trespass Claims

¶27    Thome argues that he should have been granted partial summary judgment on the declaratory judgment and trespass claims because he has exclusive title to the Thome property, which includes the disputed property.[11]  In

---

[11] The parties do not directly state what portion of the 33 feet of property south of the gas pipe stake is included in the Thome property as set forth in his quit claim deed and is contested here.  Thome's quit claim deed states generally that his property includes Lot 4 and a strip of land located 35 feet in width north of Lot 4.  William's warranty deed states generally that the south lot line of his property begins 36 feet north of Lot 4.  We infer from the descriptions in the

(continued)

support, Thome argues in pertinent part that: (1) the County acquired the Thome property by tax deed, giving the County title in fee simple absolute pursuant to WIS. STAT. § 75.14;[12] (2) the tax deed acquired by the County broke any prior chain of title to the Thome property, including any claim by William to the disputed property arising from the 1996 Abridgment; and (3) Thome's quit claim deed establishes the proper north-south lot line between the parties and gives Thome ownership of the disputed property. Thome argues that because the tax deed and Thome's quit claim deed establish, as a matter of law, that he holds exclusive title to the Thome property, including the disputed property, pursuant to *Leciejewski v. Sedlak* and WIS. STAT. § 75.14(1), Thome is entitled to partial summary judgment on the declaratory judgment and trespass claims. Because William does not effectively persuade us otherwise, we agree.

¶28    Thome cites *Leciejewski v. Sedlak*, 110 Wis. 2d 337, 348, 329 N.W.2d 233 (Ct. App. 1982), *aff'd*, 116 Wis. 2d 629, 342 N.W.2d 734 (1984), in support of his argument that a tax deed generally breaks any prior chain of title to the disputed property.[13]    We refer to our decision as *Leciejewski I*, and our

---

parties' deeds and in their arguments in front of the circuit court that the entire 33 feet of property south of the gas pipe stake awarded to the Carlsons in the 1996 Judgment is included in the legal description of the Thome property in Thome's quit claim deed and is contested.

[12] WISCONSIN STAT. § 75.14(1) provides in part that a tax deed "shall vest in the county an absolute estate in fee simple in such land subject, however, to recorded restrictions and redemption as provided in this chapter." Here, neither party argues that the tax deed was subject to any "recorded restrictions" or "redemption" under WIS. STAT. ch. 75.

All references to the Wisconsin Statutes are to the 2023-24 version unless otherwise noted.

[13] We note that in support of an aspect of his tax deed argument, Thome cites an unpublished opinion, *Burnett County v. Ekblad*, 172 Wis. 2d 572, 495 N.W.2d 525 (Ct. App. 1992). This citation violates WIS. STAT. RULE 809.23(3)(b), which prohibits citation to unpublished opinions, except for authored opinions issued after July 1, 2009. Further violations of this rule could result in sanctions to Thome.

supreme court's decision affirming our conclusion as *Leciejewski II*. The general facts are set forth as follows. Bayfield County acquired property after obtaining a judgment of foreclosure on the property. *Leciejewski II*, 116 Wis. 2d at 632-33. The County subsequently conveyed the property by quit claim deed to the Leciejewskis, who discovered that the Sedlaks had erected several structures on a portion of the property included in the Leciejewskis' deed. *Id.* at 633-34. The Leciejewskis brought a declaratory judgment action against the Sedlaks, and requested that the Sedlaks remove the structures. *Id.* at 634. The circuit court found that the Sedlaks had cultivated, used, and improved the disputed parcel for more than twenty years prior to the commencement of the action. As a result, the court determined that the Sedlaks had acquired ownership of the disputed property by adverse possession pursuant to WIS. STAT. § 893.25, and awarded title to the disputed property to the Sedlaks. *Id.* at 634-35.

¶29 This court reversed in *Leciejewski I*, and our supreme court affirmed in *Leciejewski II*. Both courts concluded that the effect of the foreclosure judgment was the issuance of a tax deed to the County in fee simple absolute, which "defeats the Sedlaks' claim of ownership based on adverse possession that arose prior to the judgment of foreclosure." *Leciejewski I*, 110 Wis. 2d at 347; *Leciejewski II*, 116 Wis. 2d at 638. In reaching this conclusion, both courts cited *In re the Foreclosure of Tax Liens*, 106 Wis. 2d 244, 251, 316 N.W.2d 362 (1982), for the proposition that "[a] tax deed is not derivative, but creates a new title that extinguishes all former titles and liens not expressly exempted from its operation," subject to the exceptions set forth in WIS. STAT. § 75.14(1) which do not include interests or claims based on adverse possession. *Leciejewski I*, 110 Wis. 2d at 347-348; *Leciejewski II*, 116 Wis. 2d at 639-40.

¶30 William argues that Thome has failed to overcome the circuit court's conclusion that Thome could not have acquired, by operation of the tax deed statutes, property that did not belong to Kennedy. However, *Leciejewski I* and *Leciejewski II* adopt the general rule that a tax deed properly issued breaks all prior titles to the property deeded, and are consistent with cases from other jurisdictions which have concluded that a tax deed creates an independent and paramount title (generally referred to in this opinion as the "tax deed rule"). *Leciejewski I*, 110 Wis. 2d at 348; *Leciejewski II*, 116 Wis. 2d at 640. Here, William does not argue that the tax deed was improperly issued, or that the tax deed was subject to any exceptions as provided in WIS. STAT. ch. 75. *See* WIS. STAT. § 75.14(1) (a tax deed "shall vest in the county an absolute estate in fee simple in such land subject, however, to recorded restrictions and redemption as provided in this chapter"). Neither the circuit court nor William cite any legal authority contrary to this rule, and we find none in our common law. In fact, this rule has been adopted and reiterated by appellate courts in subsequent decisions, and it is not limited to adverse possession claims as William argues. *See Cornell Univ. v. Rusk County*, 166 Wis. 2d 811, 822-23, 481 N.W.2d 485, 490 (Ct. App. 1992) (upon issuance of a tax deed, mineral interests are transferred to the county because only those interests specifically exempted in the statutes from operation of a tax deed are excluded from transfer pursuant to § 75.14(1)); *see also Jackson County v. DNR*, 2006 WI 96, ¶¶1, 29, 293 Wis. 2d 497, 717 N.W.2d 713 (when a county lawfully issues and accepts a tax deed, including for property which includes a landfill, all property rights vest in fee simple with the county under § 75.14). Based on the record here, the circuit court's determination otherwise is an error of law, necessitating reversal of the court's denial of Thome's partial summary judgment motion on the declaratory judgment and trespass claims and its

16

grant of summary judgment in William's favor on his declaratory judgment claims.

¶31 William also argues that a tax deed creates a new title only if it is obtained using the tax lien foreclosure mechanism set forth in WIS. STAT. § 75.521 and that Thome fails to prove that the tax deed was issued under this statutory mechanism. A county can acquire title to a property under WIS. STAT. § 75.57 by obtaining a tax deed pursuant to WIS. STAT. § 75.14, by obtaining a deed pursuant to WIS. STAT. § 75.19, or by obtaining a tax lien foreclosure judgment pursuant to § 75.521. Under any of these mechanisms, a county that acquires ownership may sell the property to a new owner. *See* WIS. STAT. § 75.35 ("any county shall have the power to sell and convey its tax-deeded lands in such manner and upon such terms as the county board may by ordinance or resolution determine").

¶32 Here, the record does not indicate which statutory mechanism was used by the County to obtain the tax deed to the Thome property. However, it is of no matter because a tax foreclosure judgment issued under WIS. STAT. § 75.521, a tax deed issued under WIS. STAT. § 75.14, or a deed issued under WIS. STAT. § 75.19 has the same legal effect of vesting a fee simple absolute in the County and severing all prior chains of title to the property. First, the phrase "tax deed" is defined in WIS. STAT. ch. 75 as including a tax deed issued under § 75.14, a deed issued under § 75.19, and a tax lien foreclosure judgment issued under § 75.521. WIS. STAT. § 75.001(2). Second, other statutory language underscores that a tax foreclosure judgment issued under § 75.521 has the same legal effect as a tax deed

17

issued under other statutory mechanisms. *See* § 75.521(8), (13)(b) ("[s]uch judgment shall have the effect of the issuance of a tax deed"). Third, as stated in the *Leciejewski* cases, a tax foreclosure judgment has the effect of the issuance of a tax deed and vests in the county a fee simple absolute, which "extinguishes all former titles and liens not expressly exempted from its operation." *Leciejewski I*, 110 Wis. 2d at 347-48; *Leciejewski II*, 116 Wis. 2d at 638-39. As a result, we reject William's argument that Thome was required to prove that the tax deed was issued under the mechanism set forth in § 75.521.

¶33    William also argues that the tax deed rule stated in *Leciejewski I* is *dicta* and that *Leciejewski I* is distinguishable from the facts here. This argument fails because the tax deed rule is also stated by our supreme court in *Leciejewski II*. This court may not dismiss statements from an opinion by our supreme court by concluding that they are *dicta*. *Zarder v. Humana Ins. Co.*, 2010 WI 35, ¶58, 324 Wis. 2d 325, 350, 782 N.W.2d 682, 694. This directive applies to the statements of the tax deed rule in *Leciejewski II*, 116 Wis. 2d at 640. William also fails to develop any persuasive argument with citations to supportive legal authority that the distinguishing facts in the *Leciejewski* cases render the application of the tax deed rule improper here. We decline to further address this undeveloped argument. *See State v. Pettit*, 171 Wis. 2d 627, 646-47, 492 N.W.2d 633 (Ct. App. 1992) (this court may decline to address undeveloped arguments or arguments unsupported by legal authority).

¶34     William also reiterates his arguments from the circuit court that Thome should be barred by the doctrines of issue and claim preclusion from challenging the 1996 Judgment and Abridgment.[14]     The doctrine of issue preclusion forecloses the ability to relitigate in a subsequent action an identical issue of law or fact that has been actually litigated and decided. *Flooring Brokers, Inc. v. Florstar Sales, Inc.*, 2010 WI App 40, ¶6, 324 Wis. 2d 196, 781 N.W.2d 248 (citation omitted).  In order for issue preclusion to be a potential limit on subsequent litigation, circuit courts must first determine whether the question of law or fact that is sought to be precluded actually was litigated in a previous action and was necessary to the judgment. *Mrozek v. Intra Financial Corp.*, 2005 WI 73, ¶17, 281 Wis. 2d 448, 699 N.W.2d 54.  The circuit court's determination under this first step presents a question of law, which we decide independently. *Flooring Brokers, Inc.*, 324 Wis. 2d 196, ¶7.  For the second step, which is required only if the first step is satisfied, the circuit court must determine whether it is fundamentally fair to employ issue preclusion given the particular factual circumstances of the case. *Id.*, ¶8.

---

[14] William asserts that Thome never addressed in the circuit court William's argument that issue and claim preclusion bars the relitigation of the ownership of the disputed property as determined by the 1996 Judgment.  We agree that Thome did not explicitly address these arguments in the circuit court, and Thome does not do so in his appellate reply brief.  However, we interpret Thome's arguments, both in the circuit court and on appeal, that the 2013 tax deed breaks all prior chains of title to the disputed property and vests in the County an absolute estate in fee simple, as implicitly refuting William's preclusion claims.

In addition, in his appellate response brief, William does not provide any record cites indicating that the circuit court addressed his issue and claim preclusion arguments, and we find no indication in our review of the record that it did so.  We will address these arguments here in the interest of judicial efficiency and because our determinations concern issues of law that we review independently as noted in the text.

¶35 We conclude that issue preclusion is inapplicable here because the issue of law William seeks to preclude from consideration is the legal effect of the 2013 tax deed on the ownership of the disputed property, which is an issue of law that was never presented or decided in the 1995 action. The reasoning is simple: the tax deed did not exist at the time of the 1995 action. The tax deed to the Thome property was not issued to the County until April 2013, and the Thome property was not conveyed to Thome by quit claim deed until August 2013. The issue of the legal effect of the tax deed on the parties' claim of title to the disputed property arose well after the 1995 action and the 1996 Judgment.

¶36 Under claim preclusion "a final judgment is conclusive in all subsequent actions between the same parties [or their privies] as to all matters which were litigated or which might have been litigated in the former proceedings." *Northern States Power Co. v. Bugher*, 189 Wis. 2d 541, 550, 525 N.W.2d 723 (1995) (citations omitted). Claim preclusion may bar subsequent litigation if the following factors are present: "(1) an identity between the parties or their privies in the prior and present suits; (2) an identity between the causes of action in the two suits; and (3) a final judgment on the merits in a court of competent jurisdiction." *Id.* at 550-51. The burden of proving claim preclusion is on the party asserting its applicability. *Alexopoulos v. Dakouras*, 48 Wis. 2d 32, 37, 179 N.W.2d 836 (1970). Whether claim preclusion applies presents an issue of law that we independently review. *Northern States Power Co.*, 189 Wis. 2d at 551 (citations omitted).

¶37 William's claim preclusion argument fails on the first factor. William conclusively asserts solely that "Thome is in privity with his predecessor in title." We reject this assertion on multiple grounds. The first factor of the claim preclusion test requires that Thome be in privity with a party in the prior action,

20

not that Thome be in privity with his predecessor in title. Indeed, Thome's predecessor in title to the Thome property is the County, which was not a party in the 1995 action. To the extent that William intends to argue that Thome was in privity with Kennedy, who was a party in the 1995 action, William does not support such an assertion with facts or law. This court need not consider arguments that are unsupported by adequate factual and legal citations or are otherwise undeveloped. *See **Dieck v. Unified Sch. Dist. of Antigo***, 157 Wis. 2d 134, 148 n.9, 458 N.W.2d 565 (Ct. App. 1990) (a court need not consider unsupported factual assertions); ***Pettit***, 171 Wis. 2d at 646-47 (a court need not consider arguments that are unsupported by legal citations or are otherwise undeveloped).

¶38 In sum, we reverse the circuit court's denial of Thome's partial summary judgment motions on the declaratory judgment and trespass claims and the court's grant of partial summary judgment on the declaratory judgment claims in favor of William.[15] As a matter of law, Thome's partial summary judgment motion on the declaratory judgment and trespass claims should be granted on remand. The judgment of trespass against Thome and the dismissal of Thome's counterclaim related to Thome's ownership of the disputed property are also vacated and reversed, and the action is remanded for further proceedings consistent with this opinion.

---

[15] Because our conclusion about the tax deed is dispositive, we do not address Thome's other arguments. *See **Lamar Cent. Outdoor, LLC v. DHA***, 2019 WI 109, ¶41, 389 Wis. 2d 486, 936 N.W.2d 573 ("An appellate court need not address every issue raised by the parties when one issue is dispositive." (citation omitted)).

## II. Thome's motion for sanctions

¶39 Thome argues that the circuit court erroneously denied his motion for sanctions against William for William's "frivolous" trespass claim. We reject this argument.

¶40 A circuit court's decision whether to impose sanctions is discretionary. *Garfoot v. Fireman's Fund Ins. Co.*, 228 Wis. 2d 707, 717, 599 N.W.2d 411 (Ct. App. 1999). We will uphold a court's discretionary decision if the court "has examined the relevant facts, applied a proper standard of law, and, utilizing a demonstratively rational process, reached a conclusion that a reasonable judge could reach." *Id.*

¶41 Thome's argument involves his September 7, 2021 motion for attorney fees and costs. In that motion, which was only three sentences long, Thome argued that William's trespass claim was "without a reasonable basis … under [WIS. STAT. §] 895.044" because "[William] knows that [Thome's] house is not located on [William's] property" and "[William] has no standing to bring the claim or to continue the trespass claim." The circuit court denied Thome's motion at a pretrial status conference, the transcript of which is not in the appellate record.

¶42 On appeal, Thome argues that the circuit court erroneously denied his motion because William's trespass claim was frivolous for a variety of reasons, and he argues that he is entitled to attorney fees covering over four years of litigation. However, most of Thome's arguments on appeal were not included in his September 2021 motion. Moreover, several of Thome's arguments on appeal involve William's amended complaint, which was not filed until almost two years after Thome's motion for sanctions was filed. Thome does not develop an

argument that the circuit court erroneously exercised its discretion in denying the arguments Thome actually raised in his motion for attorney fees and costs.

¶43 Further, in the absence of evidence showing the contrary, we must assume that the transcript of the proceeding in which the circuit court denied Thome's motion for sanctions, which is not in the appellate record, supports the court's decision on this issue. *See **Gaethke v. Pozder***, 2017 WI App 38, ¶36, 376 Wis. 2d 448, 899 N.W.2d 381 ("when an appellate record is incomplete in connection with an issue raised by the appellant, we must assume that the missing material supports the [circuit] court's ruling" (citation omitted)). Accordingly, we affirm the court's denial of Thome's motion for sanctions.

### III. William's Motion for Sanctions

¶44 Thome argues that the circuit court erroneously awarded William attorney fees and costs as a sanction for Thome's continued litigation of issues that had been previously decided by the court. As noted, the court's November 13, 2023 scheduling order stated that the court would consider sanctions if either party's summary judgment motion concerning the amended complaint raised issues that had already been decided, unless the party stated that there had been a material change in facts or law. In an affidavit submitted with Thome's partial summary judgment motion on the trespass and declaratory judgment claims asserted in William's amended complaint, Thome raised several legal arguments in support of his motion concerning the chain of title to the Thome property, the tax deed, the 1996 Abridgment, and William's failure to include a legal description of the properties in question in the amended complaint. William moved for sanctions against Thome on the grounds that these legal arguments had already been decided and Thome failed to justify raising these arguments again.

The court agreed with William, explaining in an oral ruling that "it is clear to me that this is a case that you want to keep relitigating whether you understand the Court's ruling or not." As a result, the court awarded William "all actual and reasonable costs and fees, including actual attorneys' fees," that William incurred from the November 13, 2023 scheduling order until the court's oral decision.[16]

¶45 On appeal, Thome argues that the circuit court erroneously granted William's motion for sanctions because Thome was merely filing affidavits in support of his partial summary judgment motion which were made in good faith and did not delay the scheduled summary judgment hearing. These arguments fail because the court reasonably construed Thome's affidavits as attempts to raise issues that had already been argued and decided. In other words, the court did not sanction Thome for filing affidavits but for violating a written court order that attempted to expedite the proceedings by avoiding continued litigation of issues that Thome had previously raised, that the court had previously decided, and that Thome had already preserved for appeal. See *Bishop v. City of Burlington*, 2001 WI App 154, ¶8, 246 Wis. 2d 879, 631 N.W.2d 656 (To preserve an issue for appeal, "[a] litigant must raise an issue with sufficient prominence such that the circuit court understands that it is being called upon to make a ruling."). Therefore, we affirm the court's grant of William's motion for sanctions.

---

[16] The circuit court ruled that Thome did not violate the scheduling order in raising his adverse possession counterclaims in his summary judgment materials, and that these counterclaims were not the basis for the award of sanctions against Thome. We interpret the court's comments to exclude from its sanctions order attorney fees and costs William incurred concerning Thome's adverse possession counterclaims.

## CONCLUSION

¶46    For the foregoing reasons, we reverse the circuit court's summary judgment orders, vacate the judgment of trespass against Thome and the dismissal of Thome's counterclaims related to his ownership of the disputed property, and remand for further proceedings consistent with this opinion.  We affirm the circuit court's sanctions orders.

*By the Court.*—Judgment affirmed in part, reversed and vacated in part, and cause remanded for further proceedings.

This opinion will not be published.  *See* WIS. STAT. RULE 809.23(1)(b)5.